SAMUEL REDDICK, Respondent, v. NORTHERN ACCIDENT COMPANY and NATIONAL CASUALTY COMPANY, Appellants.

**Springfield Court of Appeals, April 14, 1914**

1. INSURANCE: Accident Policy: Indemnity for Loss of Wages. Where an accident and health policy stipulated for monthly indemnity based on the money value of assured's time, *held* that insured was entitled to recover only the amount of his wages.

2. WAGES: Income: Definitions. Distinction between wages and income discussed and terms defined.

3. INSURANCE: Accident Policy: Intoxication as Defense: Burden of Proof. Where an insurance company seeks to avoid payment on an accident policy, which provides for monthly indemnity for loss of time because of bodily injuries, on the ground that the insured was intoxicated when injured, the burden of establishing such defense is upon the company.

4. APPELLATE PRACTICE: Pleadings: Immaterial Error Regarding. Where a reply was unproven, it is not necessary for the appellate court to consider as assigned error that the trial court permitted plaintiff to file such reply out of time.

Appeal from Greene Circuit Court.—*Hon. Guy D. Kirby,* Judge.

AFFIRMED (*on condition*).

*Williams & Galt* for appellant.

(1) The loss insured against in this case is loss of wages—not loss of income, as plaintiff contends. Howe v. Provident Fund Soc., 34 N. E. 832; Bean v. Travellers' Ins. Co., 29 Pac. 1114. (2) Wages means compensation given to a hired person for his or her services. 8 Words and Phrases, p. 7369; Bovard v. Railroad, 83 Mo. App. 498; Pullis Iron Co. v. Boemler, 91 Mo. App. 88; 1 Bouvier's Law Dict., p. 1206; Funk & Wagnall's Standard Dict., "Wages," "Salary;" 40 Cyc., 234-235; In Matter of Luxton, 54 N. Y. S. 778. (3) Upon the pleadings as they stand (petition, answer and amended reply), defendant is entitled to judgment, and its motion in arrest should have been sustained. The new matter in the answer was not put in issue by a denial, general or specific. The statute provides that in such case the new matter "shall, for the purposes of the action, be taken as true." Sections 1809 and 1830, R. S. 1909 should be read together. R. S. 1909, secs. 1809 and 1830. (4) The court had no right to leave the construction of the contract to the jury. Hubbard v. Mut. Reserve F. L. A., 100 Fed. 723.

*A. B. Lovan* for respondent.

(1) Since the company knew the facts, as to respondent's income it cannot now be released from the payment of amount due because the application mentions $70 wages and the proof shows that respondent was getting only $40 as a grocery clerk. Cagle v. Ins. Co., 78 Mo. App. 437; 1 Cyc., pp. 247-254. (2) If the conditions of a contract of insurance are capable of two meanings, that meaning must be adopted which is most favorable to the insured. Hoffman v. Accident Indemnity Co., 56 Mo. App. 309. (3) There is no evidence that respondent was intoxicated. Even if it is shown

that he had been drinking, that is no defense to this claim. The burden is on appellant to prove that he was intoxicated. 1 Cyc., page 268; 7 Enc. of Evidence. p. 549.

FARRINGTON, J.—Action by the assured on an accident and health policy for indemnity. Plaintiff recovered a verdict and judgment for $140 together with $6.50 as interest and $50 as attorney's fee. The insurer appeals.

The policy was issued on January 25, 1906, by defendant Northern Accident Company whose risks were subsequently reinsured by the defendant National Casualty Company. In consideration of the payment of a monthly premium of $2, plaintiff was insured against death, illness and accident. For the purpose of this opinion, he was insured at the rate of $70 per month for twelve consecutive months against total loss of time resulting directly from bodily injuries of which there shall be visible, external evidence on the body, and effected through external, violent and accidental means, and which wholly and continuously, from date of accident, disable and prevent the assured from performing every duty pertaining to any business or occupation.

Plaintiff alleged that on December 27, 1911, he fell from a ladder, breaking a rib and bruising his legs, and that by reason of such injuries he was totally disabled for a period of four months; that he had complied with every condition of the policy and had demanded payment of the indemnity which defendants have vexatiously refused. He asked judgment for $280, with six per cent interest from April 24, 1912, together with $28 as damages and $75 as an attoreny's fee.

Defendant, for answer, among other things alleged that it is one of the terms and conditions of the policy that the statements, warranties and agreements made

by the assured in the application became and were a part of said policy; that plaintiff in the application stated that his monthly wages averaged $70 per month, when in fact plaintiff's wages averaged $40 per month. It is averred that the insurer relied upon this statement and would not have issued the policy with the schedule of indemnity therein contained had it known the truth; that if there is any liability, it is to be computed under the terms of the policy on the basis of $40 per month for the number of days plaintiff was necessarily and continuously confined within the house, and therein regularly visited by a physician. Defendant then offers in the answer to allow judgment to be entered for $55.72—being for thirty-eight days disability at the rate of $40 per month and for the ten per cent penalty provided for by the Missouri law—and for the costs of the action, and tendered in court $5, being "returned premiums on the policy."

Plaintiff introduced the policy which insured him as stated in the petition. Clause 9 provides that "the monthly indemnity under this contract shall not exceed the money value of the assured's time." Clause F provides: "An agent has no authority to change this policy nor to waive any of its conditions. Notice to or from any agent or knowledge acquired by him shall not be held to affect a change or waiver of this policy or any condition thereof." Clause G provides: "Indemnity will not accrue hereunder in excess of the time the assured is, by reason of injury or illness, under the professional care and regular attendance of a legally qualified physician or surgeon." In the application, which is made a part of the policy, it is stated that plaintiff had been a member before, and the answer to the question as to monthly wages was filled in "$70," and the answer as to the occupation of the assured was filled in "Clerk and Foreman." The application recites that in forwarding the same the agent acts as the representative of the assured, thus ap-

parently giving the insurance company's appointed agent the open field in which to rope his—lamb.

Plaintiff testified that he had been a clerk in a grocery store for about thirty years; that he had paid the premiums of $2 per month on this particular policy from January, 1906, until December, 1911, when he was injured; that the accident occurred at about three or four o'clock on the afternoon of December 27, 1911, when he was ascending a ladder in the grocery store; that the ladder in some manner gave way and he fell into a barrel; that he was excited and didn't remember in what position he fell; that a rib was broken and his left limb was injured from the knee to the hip. However, after resting, he worked the remainder of the afternoon and delivered some groceries, and at closing time rode home in the delivery wagon, and then walked through an alley and across a lot and delivered some groceries to Mrs. Rowan; that he was very weak and stumbled and fell as he was going in; that he went to bed about seven o'clock, not eating any supper; that Doctor Fulbright was called, who bandaged his rib. The doctor testified that he visited plaintiff six times during a period of exactly two months from the date of the accident. Plaintiff testified that the only wages he received was for his services as clerk which was $40 per month. Plaintiff at the time of the accident did not have the income from the farm which he owned at the time the policy was issued. He testified he was in bed continuously until about the first of April; that on April 4, 1912, he went on a street car to see Doctor Heath who gave him treatments; that he was unable to do anything for a period of six or eight months; that his leg was swollen and very stiff; that he could not have done a hard day's work in a year and that he couldn't do it at the time of the trial; that he had not been entirely well since the accident. He testified that he was getting $30 per month from a farm owned by him at the time

the application for the policy was made some six years before the injury occurred. He stated in direct examination that the company refused at the time of his first demand to pay him the indemnity and that he had been trying for about a year to collect it, making several demands.

Doctor Patterson testified that he was called to see plaintiff on May 1, 1912, and found his left leg swollen. Defendant objected to him telling whether the condition he found could have been caused by the fall, and the court sustained the objection.

Doctor Fulbright, who was the first doctor in the case, testified that the last of his six visits was made on February 27, 1912; that plaintiff had an injury to his side or to his rib; that it was perhaps a month or six weeks after the date of the accident that plaintiff had "his trouble with his leg."

Defendant introduced one witness who testified that he conducted a meat market in the store where plaintiff worked; that there was a bottle of whiskey behind the ice box and that plaintiff went there and took several drinks during the day he was injured. Mrs. Rowan testified for the defendant that when plaintiff delivered the groceries about December 27, 1911, late in the evening, his clothes were dirty and she could smell liquor on his breath.

Defendant offered evidence tending to prove the allegation of the answer that had the insurer known the plaintiff's wages were only $40 per month, it would not have issued the policy *with the schedule of indemnity therein contained.*

Defendant requested a peremptory instruction at the close of all the evidence which was refused, of which complaint is made. This goes to the right of the plaintiff to have the jury pass upon his case, and has nothing whatever to do with the amount the jury might be justified in allowing him under the evidence adduced. It is admitted that the policy was issued, and it is

proven that the premiums were duly paid and accepted. There is evidence of total loss of time, as a result of bodily injuries of which there was visible, external evidence on the body, which injuries were brought about by external, violent and accidental means; that the assured was attended by a physician; that all the conditions of the policy have been complied with; and that plaintiff has demanded and defendant has refused to pay. The requirement as to being under the care of a physician goes to the amount of the recovery, rather than to the right to have the issues submitted to the jury.

In considering this contention (that defendant was entitled to have the court direct the jury to return a verdict for the defendant), we are reminded of the defendant's answer where it solemnly agrees that judgment may be given the plaintiff for indemnity and penalty, when a judgment for any indemnity in this case must be based upon the elements necessary to make a prima-facie case for the plaintiff.

We hold that the peremptory instruction was properly refused.

As stated, when the application for this policy was being made out, the answer to the question as to the average monthly wages was filled in—"$70." Plaintiff's testimony as to this is that the business of insuring was carried on at H. M. Heckart's jewelry store. It was shown that Mr. Heckart, the agent, had since died, and defendant objected to any testimony as to what the agent said to plaintiff or as to what occurred between the agent and plaintiff, and thus all such testimony was kept out of the case. Plaintiff was then asked if anyone else looked after the business besides Mr. Heckart, and he replied that Miss Fanny Heckart did. Plaintiff was asked what was the amount of his "income" at the time he took out the policy. Defendant objected because in the application the word "wages" is used, and that his average monthly

"wages" is therein stated to be $70, and that "income" and "wages" are not the same thing. This being overruled, he answered that his income at that time was $30 per month from a farm and that he got $40 per month for working in the store. Plaintiff in rebuttal introduced a letter from the National Casualty Company to plaintiff's attorney in reply to a letter from the attorney. Appellant's counsel state in their brief that the letter was written by a subordinate employee (of which there is no evidence in the abstract) and that the letter shows he did not have the plaintiff's application before him because of certain things said and certain figures used in the letter. In the letter this language is used: "This man was insured as a farmer. . . . We find in looking over his proofs that he has sworn that he receives only $40 per month *income.*" At two other places in the letter the writer refers to "his income of $40 per month;" indeed, the word "income" is used five times in the letter, and never a time is the word "wages" used. Plaintiff testified that in preparing the application for the policy Miss Heckart did all the writing; that he merely answered questions and she did all the writing; that he didn't look it over—merely signed it; that Miss Heckart put him down as "clerk and foreman," but that he didn't state to her that he was foreman. There is no evidence as to how she knew to write in $70 as his "average monthly wages."

This leads us to digress for a moment to notice the amended reply filed by plaintiff in which it is charged that "when plaintiff was solicited for the policy sued on, and at the time said policy was issued, plaintiff stated to defendants that plaintiff's income was $70 a month, and that the income consisted of $40 received as a grocer's clerk and $30 income from plaintiff's farm; that defendants so understood it at the time the policy was written, and that defendants delivered said policy to plaintiff and accepted the premiums on it

from plaintiff knowing that plaintiff's income was as herein stated." The allegations of this pleading find no support in the evidence. The contract between the parties is unambiguous, and to be understood does not require the aid of letters written long after its execution. Counsel for respondent stated in oral argument, in answer to a question why he did not offer Miss Heckart as a witness, that she was present at the trial but asked to be excused because of the supposed embarrassment of being a witness in court and that he let her go. Had she testified, plaintiff might have had *some* evidence to support his position that it was his income that defendant insured, although the question of her agency would have at once been raised. There is a distinct difference between "income" and "wages" as everyone knows. "Wages" is the compensation given to a hired person for his or her services; it is that for which one labors; it is the stipulated payment for service performed. [Bovard v. Railway Co., 83 Mo. App. l. c. 501.] It may be a part of his income or it may be his entire income, but in its general, popular acceptation, it is not as broad as the word "income." The agreement contemplated an indemnity to the plaintiff if, by an accidental injury, his ability to earn money should be suspended—if there was a temporary destruction of plaintiff's power to earn money by personal exertions. [See, Wall v. Casualty Co., 111 Mo. App. l. c. 524, 86 S. W. 491.] In any event, the word "wages" was used in the application, and it was made plain in the policy that the insurance was indemnity based on the value of the assured's time. The provisions of the contract are not capable of two meanings.

Plaintiff admits that the value of his time was $40 per month. He is bound by the policy provision that indemnity shall not accrue in excess of the time he is under the professional care and regular attendance of a legally qualified physician. The only regular attend-

ance of a physician testified to is that of Doctor Fulbright, and it is established that his visits extended over a period of exactly two months, and he then signed the usual proofs required of the attending physician by the insurance company. The jury evidently allowed plaintiff two months' indemnity at the rate of $70 per month; in fact, the court instructed the jury that if they found the issues for the plaintiff they would allow him $70 per month for the time lost.

Appellant contends that under the showing made plaintiff was entitled to only the value of his time—$40 per month—for two months. If it be said that perhaps plaintiff paid a higher premium than he would have paid for a promise of indemnity of but $40 per month, the answer is that there is no such evidence in the record brought here. The insurance was against illness, accidental death, and disability from accident. For aught we know, every policy-holder in class C paid $2 per month premium regardless of whether the money value of his time was $40 or $70. In the condition of the record, we think the trial court erred in giving the instruction to the effect that if the jury believed and found from the evidence that at the time the policy was issued plaintiff was receiving an income of $70 per month, etc. (and other elements), they would find the issues for the plaintiff in a sum equal to $70 per month, etc.

Other assigned errors have been reviewed and we think are virtually disposed of by what has been said. We do not believe there is any evidence on which a jury would be justified in holding that plaintiff knowingly, falsely stated in his application that his *wages* averaged $70 per month so as to avoid the policy entirely. Defendant failed in a feeble attempt to show that plaintiff was injured in some other manner or at some other place. However, the court generously gave an instruction covering this point. There was ample evidence on which to justify the finding that the inju-

ries were sustained at the time and in the manner alleged in the petition. The evidence as to plaintiff being injured while under the influence of intoxicating liquors or in consequence thereof is such as to make a jury question. A proper instruction put that issue to the jury, and we think they very properly decided it in favor of the plaintiff. The burden of proving it was on the defendant. [1 Cyc. 268.] It is unnecessary to discuss the assigned error of the trial court in permitting plaintiff to file a reply out of time since we have shown that the reply was unproven in its entire scope.

Aside from the giving of the instruction referred to we believe the case was properly tried and that the judgment is for the right party. The judgment will be affirmed provided the plaintiff within ten days from the date of the filing of this opinion files with the clerk of this court a written remittitur of $60 of the judgment for indemnity and $3.57 of the judgment for interest, so that the judgment shall stand for but $132.93; otherwise, the judgment will be reversed and the cause remanded for a new trial. *Robertson, P. J.,* and *Sturgis, J.,* concur.