## Roberts v. Frank Carrithers & Brothers.

(Decided April 26, 1918.)

### Appeal from Shelby Circuit Court.

1. Exemptions—Not to Extend to Other Articles.—When a specific article of personal property is made exempt, by statute, from seizure and sale, for the payment of the debts of the owner, the courts are not authorized, by construction, to extend the exemption to another or different article.

2. Exemptions—Determined by Statute.—As in the absence of a statute creating exemptions, all property is subject to execution, the right of the debtor to an exemption is determined by the statute which creates it.

3. Exemptions—Construction of Statute.—The true rule of construction of a statute, which creates exemptions of property from

coercive sale for the payments of debts, is to ascertain the intent of the legislative authority in enacting it, as in the construction of other statutes.

4.  Exemptions—Statute—Crop of Tobacco.—A crop of tobacco is not "income earned by labor," within the meaning of section 1697 Kentucky Statutes, and is not exempt from coercive sale for the payment of the owner's debts, except when the debtor has not provender on hand suitable for the maintenance of his live stock, the tobacco or a sufficiency of it may be exempted in lieu of the necessary provender not on hand.

5.  Exemptions—Income Earned by Labor.—The "income earned by labor," contemplated by section 1697, Kentucky Statutes, is an income, which can be measured in denominations of money, per month, the receipts being similar in character to that received from a salary or wages, although not necessarily payable at fixed times or in fixed amounts, but, at the times and in the amounts, the proceeds of labor may be received, as in the case of proceeds from the occupation of a mechanic may arise, and such like.

BEARD & PICKETT for appellant.

WILLIS, TODD & BOND for appellees.

OPINION OF THE COURT BY JUDGE HURT—Denying appeal.

On the 29th day of December, 1916, the appellees, Frank Carrithers and brothers, filed this action against the appellant, C. W. Roberts, in which was sought a personal judgment against appellant upon a promissory note, which he had executed to the appellees, in 1912, and a general order of attachment against his property, which was subject to execution, and the subjection of such property to the payment of the debt. The averments necessary to obtain the attachment were made and it being issued, was levied by the officer upon the one-half of a crop of tobacco owned by appellant. The crop of tobacco was grown in the year, 1916, by appellant, as a tenant, upon the farm of one Neel and was jointly owned by Neel and appellant. The grounds of the attachment were, that the demand sued upon was due upon a contract and that appellant did not have sufficient property, subject to execution, in the state, to pay the debt, and its collection would be endangered by the delay arising from waiting to obtain a judgment and a return of *nulla bona,* and the further ground that appellant was about to sell his property with the intent to

cheat, hinder and delay his creditors in the collection of their debts, especially the appellees. The obligation of the debt nor the grounds of the attachment were not controverted, but appellant, by answer, averred, that only ten per centum of the value of the property levied upon was subject to be attached and applied to the payment of the debt, and the remainder of the property was exempt from seizure or sale under execution, attachment, distress or fee bill. By his answer, the appellant averred, that, at the time, the attachment was levied and at the time of the filing of the answer, he was a housekeeper, with a family, and resident within this state; that his family consisted of a wife and minor children, who were dependent upon him for support and maintenance; that at the times mentioned, he. was not the owner of any property, except a horse, of the value of seventy-five dollars; eight barrels of corn, of the value of thirty-four dollars, and hay of the value of eight dollars, and the one-half of the crop of tobacco levied upon; that the tobacco owned by him was of the value of three hundred and fifty dollars; that the tobacco had been grown by him during the year 1916, upon the farm of Neel, who was the owner of the other one-half of the tobacco; that the tobacco was his wages and income for the year, 1916, earned by his labor, and constituted all his wages and income for the year, 1916; that same amounted to less than seventy-five dollars per month, and that ninety per centum of the tobacco owned by him or its value was exempt from the attachment, and that only ten per centum of it, or its value, was subject to the attachment. He especially pleaded and relied upon the statutes providing exemptions for debtors.

A general demurrer was sustained to the answer and appellant declining to plead further, a personal judgment was rendered against him upon the note, and a, further, judgment, by which the attachment was sustained and the property subjected to sale for the satisfaction of the debt sued upon. From the judgment ordering the attachment to be sustained and a sale of the property in satisfaction of the debt an appeal is sought and a reversal of the judgment prayed for.

The question for determination is, whether the tobacco crop owned by appellant, under the circumstances stated in the answer, is subject to levy and coercive sale for the satisfaction of his debts, or is it exempt

from such levy and sale by the provisions of the statutes upon that subject. To determine such question a construction of the statutes relating to exemptions of personal property of debtors, in their amended form, and the ascertainment of the legislative intent in making the enactments is necessary.

Section 1697, Kentucky Statutes, now controls and determines what personal property of a debtor is exempt from coercive sale for the payment of his debts, as modified by sections 1698, 1699 and 1700 of Kentucky Statutes.

Section 1697, *supra,* is as follows:

"The following property of persons with a family resident in this Commonwealth, shall be exempt from execution, attachment, distress, or fee-bill, namely: Two work beasts, or one work beast and one yoke of oxen; two plows and gear; one wagon and set of gear, or cart or dray; two axes, three hoes, one spade, one shovel; two cows and calves; beds; bedding and furniture sufficient for family use; one loom and spinning wheel and pair of cards; all the spun yarn and manufactured cloth manufactured by the family necessary for family use; carpeting for all family rooms in use; one table; all books not to exceed seventy-five dollars in value; two saddles and their appendages; two bridles; six chairs, or so many as shall not exceed ten dollars in value; one cradle; all the poultry on hand; ten head of sheep, not to exceed twenty-five dollars in value; all wearing apparel; sufficient provisions, including breadstuff and animal food to sustain the family for one year; provender suitable for live stock, if there be any such stock, not to exceed seventy dollars in value; and if such provender be not on hand, such other property as shall not exceed such sum in value; all washing apparatus, not to exceed seventy-five dollars in value; one sewing machine, and all family portraits and pictures; one cooking stove and appendages, and other cooking utensils not to exceed in value twenty-five dollars; ninety per centum of the salary, wages or income earned by labor, of every person earning a salary, wages, or income of seventy-five dollars or less per month, provided that the lien created by service of garnishment, execution or attachment, shall not affect ten per centum of such salary, wages, or income, earned at the time of service of process; of the salary, wages, or income earned by labor,

of every person earning a salary, wages or income in excess of seventy-five dollars per month, sixty-seven and one-half dollars per month and no more shall be exempt; provided, that these amended exemptions shall only apply in actions brought upon contracts entered into after the effective date of this act, and no provision of this law shall be construed to make it retroactive in effect.''

This statute has for a groundwork a statute similar in substance, with changes made by amendments from time to time, but which has been in force since the period of the Revised Statutes, but, in its present form, it has existed only since the amendment of 1910, found in Session Acts, 1910, page 341, and its re-enactment in accordance with the amendment. According to its terms, a debtor is not entitled to hold, as exempt from seizure and sale for the payment of his debts, any articles of personal property not designated, as exempted by the statute, except, in the instance, where he has live stock, which are exempt, and he has not provender suitable for the sustenance of such stock, in which instance, he may hold as exempt, in lieu of provender not on hand, other personal property, not in excess of seventy dollars in value, necessary to sustain them. In the instant case, however, suitable provender for the debtor's live stock seems to have been on hand, at the time of the levy of the attachment, and exemption is not claimed of any of the tobacco seized upon that ground. It will be observed, that the statute. does not mention tobacco as being one of the articles of personal property, which is exempt from seizure and sale for the benefit of the creditors of the owner. It has been held that when a specific article of personal property is made exempt from seizure and sale for a debt of the owner, the courts are not authorized to extend the exemption, by construction, to any other or different article. Carty v. Drew, 46 Vt. 346. It is, also, a rule, that the right of a debtor to an exemption of his property from seizure and sale for the payment of his debts is determined by the statute, which creates the exemption and only the specific articles mentioned as exempt are held to be exempted, as in the absence of such statutes all property is subject to execution. 18 Cyc. 1374; Peak v. Weller, 10 R. 153; Herndon v. Waters, 14 R. 667; Hayden v. Crutchfield, 3 R. 83. It is true, that in the construction

of statutes, which create exemptions of property of
debtors from seizure and sale for the payment of their
debts, many courts are inclined to a very liberal inter-
pretation, upon the theory, that such statutes are in-
tended to extend benefits to an unfortunate class, but,
this rule of construction, if it has been adhered to at
all in this jurisdiction, must not be indulged to the ex-
tent of conferring privileges and benefits by construc-
tion, which were not intended to be conferred by the
legislative authority, and it is manifest, that the true
rule of construction, which should be applied to this
class of statutes, as to others, is to ascertain the intent
of the legislature in making the enactments.  In this
state only one general class of persons have ever been
accorded the privilege of holding property, owned by
them, free from seizure or sale, at the hands of their
creditors. The exemptions have never been allowed to
any class, except persons with a family dependent upon
them—that is either wives, children or dependent rela-
tives residing with the head of the household and to
whom, he was under either a legal or moral obligation
to maintain. All other persons, however destitute their
circumstances, or in fact dependent, have uniformly,
both by the legislature and the courts, been denied the
benefits of laws, which exempt property from the pay-
ment of debts.  Seaton v. Marshall, 6 Bush 430; Bell v.
Keach, 80 Ky. 42; Dinkins v. Cruden-Martin Co., 91 Mo.
App. 209; McMurray v. Shuck, 6 Bush 111; Ellis v.
Davis, 90 Ky. 183; Louisville Bk. Co. v. Anderson, 19
R. 1839; Bosquet v. Hall, 90 Ky. 566.  Our legislative
authority has, however, from time to time, provided for
different classes of housekeepers with families, and
have created exemptions for the different classes which
other persons with dependent families have not
been granted, as to mechanics, by section 1699 Kentucky
Statutes; to ministers of the Gospel, attorneys at law,
physicians and surgeons, by section 1700, Kentucky
Statutes, and formerly to wage earners, as provided by
section 1701, Kentucky Statutes, which after having
been in force for many years was repealed on March
4th, 1904.  The exemptions provided for these classes
have uniformly been accorded to them, but denied to all
other classes.

The appellant not being of either of the classes pro-
vided for by sections 1699, 1700, nor 1702, Kentucky

Statutes, all exemptions to which he is entitled must be provided for by section 1697, *supra*. It appears that he is a farmer and in growing the crop of tobacco in controversy was conducting a business upon his own account and not as a servant or employee of another. Tobacco, not being one of the articles of personal property, which is exempted by section 1697, *supra*, from seizure and coercive sale for his debts, under execution, attachment, distress or fee bill, it would be very clear, that he would not be entitled to hold it, as exempt, as against such process, but for the dubious language made use of in section 1697, *supra*, with reference to "salary, wages or income earned by labor." It is contended for him, that the crop of tobacco is his wages and income earned by his labor for the year, 1916, and that the value of it amounts to an income of less than seventy-five dollars per month for the year, and hence that only ten per centum of it or its value is subject to attachment and appropriation to the payment of his debts, and that the remaining ninety per centum of it is exempt. It will be observed that before the legislature came to deal with property, such as "salary, wages or income," that it had already made provision for the exemption of all property, in kind, which is provided for by the statute.

"Salary, wages or income" are joined in the same connection, they are to be earned in the same way "by labor," and the same percentage of each of them is made exempt, and the portion of each not exempt is ten per centum of the sum "earned at the time of service of process." The salary exempted is ninety per centum of the amount earned per month, provided the salary is seventy-five dollars or less per month. The same ratio of exemption applies to wages, and the same exemption applies to income. The exemption of salary, wages and income is ten per centum of each of them, computed up to the same time, which is at the time of service of process. A salary is the consideration paid or agreed to be paid to a person at regular, fixed periods, in consideration for his services, and wages has a similar meaning, except that salary is ordinarily used when speaking of the employments of a more dignified character. Both salary and wages are terms invariably used in defining the consideration, which an employer bestows upon one, who is serving him, in consideration for his services and is usually a consideration in money,

and is never applied in describing the gain, profit or recompense, which accrues to one who is conducting a business of his own and upon his own account. Hence, a tobacco crop, which a farmer grows upon his own account and as a business venture of his own could not, in any event, be wages earned by him, except the word wage should be used in a figurative and not a literal sense. The "salary, wages or income" are further similar, as described in the statute, in that they can only be claimed by those persons who are "earning a salary, wages or income" and must in each instance be earned in the same way, that is, "by labor." Wages or money received for services is the ordinary meaning attached to the use of the word, earnings. Income is a term of considerable flexibility, and its meaning in any particlar instance, like many other words in our language, must be determined from the context. Its popular signification is the return in money, which one receives from an investment of capital, as distinguished from the capital itself, but, it may be properly applied in defining the proceeds of labor or the receipts of a profession, business, or occupation. The context, in which it is used, in the statute under consideration, would seem to preclude the idea, that it could consist of property, in kind, or of any kind of property, which can not be measured in denominations of money, per month, so as to determine what the income is per month, as the statute seems to be dealing only with an income, which, so far as the character of the receipts, which go to make up the income is concerned, is similar to wages or a salary. It is an income "earned by labor," which is meant, but the proceeds of labor, in definite sums of money, paid or promised to be paid, is an income "earned by labor," and so is a salary or wages or the receipts in money from day to day or promises to pay money arising from the occupation of mechanics and such like. Previous to 1910 the statute permitted, when a debtor did not have on hand a sufficiency of provisions, including breadstuff and animal food, to sustain his family for one year, to make up the deficiency, by having allotted to him in lieu of such provisions, not on hand, other personal property, in kind, to the extent in value of forty dollars for each member of his family, but in 1910, that provision of the statute was stricken out by the amendment at that date, indicating an intention on the part of the

legislature to take away the right of exemption of any articles of personal property, except such as were specifically mentioned in the statute, and except with reference to necessary provender for live stock, and at the same time the present provision regarding salary, wages or income was incorporated in the statute. Hence, it is manifest that the character of income intended by the statute is an income "earned by labor," which can be measured in denominations of money per month, the receipts being similar in character to that received from a salary or wages, although not necessarily payable at fixed times or in fixed amounts, but, at the times and in the amounts, the proceeds of labor may occur, as the · proceeds from the occupation of a mechanic arise, and such like. That property, in kind, especially a crop of tobacco grown by a farmer upon his own account, was not intended by the legislature to be an income, within the meaning of the statute, *supra*, is made more mani- fest, because of the utter impossibility and impracticability of making a disposition of it, as an income is contemplated by the statute. The statute provides for an exemption of ninety per centum of income earned per month, and that ten per centum of it may be subjected to debt, which has been earned at the time of service of the process, in instances, where the income is seventy-five dollars or less per month. The provision of the statute is the same with reference to incomes in excess of seventy-five dollars per month, except the exemption in such instance is sixty-seven and one-half dollars. What months and how many months will enter into the computation in determining what the exemption shall be touching a tobacco crop? Ten per centum of the income of any month may be subjected, where the income is seventy-five dollars or less per month, and if the income exceeds seventy-five dollars per month, the excess above sixty-seven and one-half dollars, per month, may be subjected to attachment, yet, a tobacco crop, unless severed from the ground, is not subject to an attachment, for an ordinary debt, until after October first of the year in which it is grown. Section 1696, Kentucky Statutes. If a tobacco crop is held to be an income within the meaning of the statute, in what way could be determined the amount of the income for any particular month in which process might be served? And if the cultivation and caring for the crop extended through more than one

year, how many years would be taken into the computation in determining the relative rights of debtor and creditor? Hence, it is concluded, that a crop of tobacco is not exempt as an "income earned by labor" from coercive process for the satisfaction of the owner's debt, within the meaning of the statute, and the appeal is denied.