FRED M. CROLLARD, RESPONDENT v. NORTHERN INSURANCE COMPANY, APPELLANT.—200 S. W. 2d, 375.

Kansas City Court of Appeals. Opinion delivered January 13, 1947.

*Michaels, Blackmar, Newkirk, Eagar & Swanson, Roy P. Swanson*
and *Ralph M. Jones* for appellant.

*Ira B. Burns* for respondent.

DEW, J.—This is an action for a declaratory judgment on an automobile accident policy written by the defendant in favor of Carl D. Higgins of Kansas City, Missouri. Plaintiff is assignee of the beneficiaries of the deceased insured. The issues of fact were submitted to a jury which found the same in favor of the plaintiff, whereupon judgment was rendered in favor of plaintiff for the face of the policy, to-wit: $5,519, with interest at 6 percent on past due installments; that is to say, $1400 for past due installments, plus $43.50 interest thereon, and $4119, payable at the rate of $100 per month on the first day of each month, beginning January 1, 1946, until paid. Execution was ordered for $1443.50 on the judgment aforesaid. From said judgment the defendant appealed.

The policy, No. B-219-943, issued December 15, 1938, insured Carl D. Higgins against loss of life resulting directly and independently of all other causes from bodily injuries sustained during the term of the policy, subject to conditions therein contained, and provided that if affirmative proof be furnished insurer "that death of the insured resulted from bodily injury effected solely through accidental means while the insured was operating, driving, riding in or cranking an automobile of the private passenger car type; * * * and that such death occurred within 90 days after such injuries were sustained," then insurer would pay $5519 to the beneficiary of the policy. Among the risks specifically excepted from the policy was the loss of life "while Insured is intoxicated or under the influence of intoxicants, drugs or narcotics; * * * or resulting directly or indirectly from bodily or mental infirmity, illness or disease of any kind". There is no dispute about the fact that the policy was in full force and effect at the time of the death of the said insured.

Defendant, in its answer, admitted its residence, its authority to transact business in Missouri, the issuance of the policy in question, and the death of Carl D. Higgins on May 18, 1940. It denied all other allegations of plaintiff's petition. The answer affirmatively pleads that "at the time insured died and at the time plaintiff alleges that the insured sustained injuries resulting in his death, the insured was intoxicated and under the influence of intoxicants, drugs or narcotics," and specifically denied, among other things, "that the death of the insured resulted directly and independently of all other causes from bodily injuries effected solely through accidental means while the insured was operating, driving, riding in or cranking an automobile".

Respondent moves for a dismissal of this appeal on the assigned ground that the appellant has not complied with Rule 1, Section 1.08,

Subsection (a), Part 3, in that appellant has not specified any assignments of error in its brief. There are no assignments of error set forth in the appellant's brief separate and apart from its points and authorities. However, under its points specifications of alleged error are made for each point presented. This, we believe, substantially complies with the rule noted. The motion to dismiss the appeal is denied.

Plaintiff's evidence tended to show that Bertha L. Higgins, wife of the deceased insured, was the beneficiary named in the policy mentioned; that insured died May 18, 1940 in the General Hospital in Kansas City, Missouri; that under the terms of the policy, in the event of the death of the widow, Harwood O. Higgins would be paid the monthly installments of $100 thereunder until fully paid; that Bertha L. Higgins and Harwood O. Higgins executed and assignment of said policy on October 15, 1940, to the plaintiff; that insured was about 52 years of age at his death, was an engineer and contractor engaged in construction business on a project near Kansas City with the Kemper Investment Company.

Plaintiff's Exhibit 3 was the certificate of death, showing the death of insured May 18, 1940, and contained the following entries: "Immediate cause of death: Subdural cerebral hemorrhage; Due to Fracture of the skull; Due to Injury by unknown means".

Plaintiff's evidence further tended to prove that the insured went to his home for lunch on May 16, 1940, at which time there was no appearance of intoxication. He left to keep a business engagement, and appeared there entirely sober. He went again to his home and wrote checks in connection with his work, and while there was "absolutely sober"; he left home between 3:00 and 4:00 o'clock that afternoon and met an acquaintance down town, and the insured took him in insured's car to 38th and Main Streets. Throughout the drive the insured appeared entirely sober. He then entered the "Keg", a tavern adjoining the Netherlands Hotel, and there was no evidence that insured had taken any drinks at that time. About 7:30 later the same evening, he went to a restaurant, cashed a check for $10, and ate a steak; at that time he was completely sober; that about 8:00 o'clock that evening he met acquaintances near 38th and Main, talked with them a while, at which time he had no appearance of intoxication. Thereupon the parties entered the Keg, and the insured, without stopping except to speak to a few persons, went on out the back door to a parking lot where his car was parked. At that time he did not appear to be intoxicated.

The deposition of Junius B. Coffey was read in plaintiff's case. He testified that he saw insured come through the Keg just prior to the accident, but did not learn until later who he was, but noted him especially because he was a stranger to the witness. Witness testified that when he learned that there was some difficulty in

the parking lot behind the tavern, he went to the back door of the tavern and saw the same man standing on the bumper of the car, and others were lifting the other bumper to get them apart; that he later learned that this man was Carl D. Higgins, the insured; that Higgins was trying to weigh down the bumper to disengage it from the bumper of the other car, and jumping up and down on the bumper; that he saw the man fall off the bumper and hit his head on it; that several people helped carry him to the wall of the nearby hotel and set him up against it; that it was after sundown, but there were always lights burning in the hotel which lighted the parking lot. The witness was not present when the man was removed by the police.

On cross-examination, witness Coffey was asked:

"Q. So that then you say you looked for this distance and you observed the person you subsequently learned to be called Higgins on the bumper of the car? A. Yes.

Q. And could you from that distance clearly recognize him as this man that came through the 'Keg'? A. No, I don't suppose I could.

Q. Well, now, tell me definitely, did you or did you not recognize him as the man that came through the 'Keg' as you have testified? A. No. I couldn't say that it was.

Q. So that you cannot tell us now whether or not the person you saw on the bumper of the car was this person that walked through the bar and whom you subsequently identified as Carl D. Higgins; is that right? A. No—not as far as facial identification goes. I couldn't.

Q. By dress? A. No. All I know is that it was Carl Higgins that came through the place, and that I learned that it was him hooked his bumper on that other car, and that is as far as—that would be the only way I would ever identify him eventually.

Q. So that your only means of identification is from what someone else told you; is that correct? A. As to the identification, yes.

Q. You have no independent recollection or any means to sustain your identification of your own particular knowledge, have you? A. I don't know just exactly what you mean. You mean as to identifying him on that car out there? No. The only identity I had on that was because he was dead the next morning. That is all I know. No. I couldn't positively identify him by facial features or clothes.

Q. What I mean is you could not identify— A. No.

Q. —this person that you saw standing on the bumper, jumping up and down on the bumper as the person you saw walk through the 'Keg' and whom you subsequently learned to be Carl D. Higgins? A. No.

Q. There is no question in your mind that you observed the man you subsequently learned to be Carl D. Higgins all during the passage from the front door to the rear door of the Keg? A. You mean when he went through the place? No, there is no doubt in my mind but what I saw him go through there.

Q. And he walked directly through the Keg and through the rear door? A. Front to the rear''.

On redirect examination:

''Q. At the time this fellow fell out there in the back, where was he standing when he fell? A. He was standing on the bumper of the car''.

On recross-examination:

''Q. And this person you saw on the bumper, you could not identify as any particular person? A. No''.

Defendant moved to strike the entire deposition of witness Coffey, and later that part of the testimony read from the deposition of witness Coffey by appellant's counsel, on the ground of lack of identification of the insured. The court overruled the objections and stated that that portion of the testimony in which the witness said someone was standing on the bumper, and that the witness did not know who that person was, was part of the circumstances of the case. Defendant's motion for a directed verdict at the close of plaintiff's case was thereupon overruled.

Mildred Parry, witness for defendant, testified that she was living at the Netherlands Hotel at the time and also had her car parked in the back of the hotel; that she received a telephone call that someone had hooked a car with the bumper of her car, and she went down to see about it; she found that the man in the other car was trying to back his car out and had hooked the rear bumpers together; that she did not know the man; that he appeared to be intoxicated, and indicated such by the odor of his breath; he kept arguing and saying he would pay for it, that he always paid his bills; that she urged him to let her back his car out; that he finally, with difficulty, got out of the car and the witness pulled insured's car out of the way; the insured was staggering, and required her help to get out; that when she got in his car, insured stood near the front and to the side of the car where she could see him; that she did not actually see him fall, but when she got out he had fallen and was lying on the pavement; that several people who had gathered in the parking lot ran up to him; that witness, who was a nurse, took his pulse and said he looked like he had been in shock and was in very poor condition; that she smelled the odor of alcohol on his breath, and that he had very definitely been drinking. The insured was then unconscious and his pulse very thready. Other people moved him up to the nearby hotel building and set him up against the wall. She testified that someone was on the back bumpers helping to spring them apart,

but that it was not the insured, and that he could not possibly have fallen off the back bumper because he was in front of the car. She admitted that when backing the car, she was looking in the car mirror and when she was driving the car forward she could see objects in front; that she was not watching insured while she was backing the car, nor paying particular attention to him; that there were about a dozen people at the back of the car and only one man fell on that occasion.

Records of the Police Department and the coroner's office were introduced, showing the death of Carl D. Higgins, insured, on the date aforesaid. The coroner's record contained the following as part of the post mortem report: "Diagnosis: Alcoholism and diabetes mellitus (clinical). Coronary sclerosis; Extreme pulmonary congestion and edema with a probable bronchopneumonia; Arteriosclerotic nephritis; Fatty degeneration of the liver with chronic passive congestion; Subdural and subarachnoid hemorrhage; Encephalomalacia of the left upper temporal lobe and the right frontal lobe; Chronic arteriosclerotic nephritis; Skull fracture, right occipital and parital bones".

The records of the General Hospital showed, among other things, that insured was a patient there May 17, 1940; that the diagnosis was acute alcoholism, and that the final diagnosis in order of importance, was acute alcoholism, skull fracture, diabetes mellitus. Further records of examination and treatment at the hospital showed a diabetic condition, indicating diabetic coma complicating acute alcoholism.

The final diagnosis shown by the hospital records was skull fracture, liver degeneration, pulmonary congestion, coronary sclerosis, nephritis, alcoholism and diabetes mellitus.

One witness, the owner of the tavern, testified for the defendant that he was leaving the Keg when the insured entered and that the insured staggered a little. The witness signaled the bartender not to serve insured any drinks. The insured walked right on through the place. Witness did not know whether the staggering was due to sickness or drinking.

A police officer testified that when he helped carry the insured to the police car, the witness could smell whiskey on the insured, and that the insured was unconscious. He said a lady there at the time stated to him that insured had fallen. Witness delivered the insured to the jailer at the jail and left him on the floor there.

Another witness for defendant testified that he joined the crowd in the parking lot, noticed the man sitting with his back to the hotel wall, and that he had the appearance of being intoxicated; that there was an odor of whiskey about him. He felt the man's head and found a bump on the head. The man was unconscious throughout.

Another police officer called the attention of the jailer to the bump on the man's head. A third police officer testified that the following

morning he saw Mr. Higgins still lying on the jail floor unconscious. He could not recall whether there was an odor of alcohol about the insured or not. ·Witness then sent for a doctor, and the insured was taken to the General Hospital, still unconscious.

In rebuttal the wife of the deceased testified that Miss Parry had told her the next day that deceased had fallen from the bumper of the car while he and others were trying to separate the two cars. The daughter of the insured also testified to having heard Miss Parry make such statement to Mrs. Higgins. She also saw her father at the noon hour on the day of the accident and had lunch with him, and stated that he showed no evidence of having been drinking.

A physician testified for the plaintiff that acute alcoholism would not likely appear.in a person who had not taken a drink of intoxicants for over 36 hours; that nothing in the record of the hospital would indicate acute alcoholism except that the doctor had written on it the word "alcoholism". He said that a strong odor of alcohol on the breath of a person would at least suggest alcoholism, and would be one of the symptoms of intoxication.

Appellant's first point is that there was a complete failure of proof on the primary issue as to whether insured was "operating" an automobile when he received the injuries contributing to his death. Its specification on that point is that the deposition of witness Coffey was the.only testimony pertaining to identification of the man that witness saw ·on the bumper of car and later saw fall, hit his head, and later carried to the wall of the hotel, and that that evidence should not have been admitted because the witness repudiated his identification of the insured. His testimony on that point is set out substantially hereinbefore.

Other evidence in the case must be considered on this issue. Appellant's witness, Mildred Parry, owner of the other car involved, and who was present, testified for defendant positively that Carl Higgins was lying on the pavement in the parking lot on the occasion in question, and was unconscious, and was carried to the wall of the hotel building nearby; that she conferred with insured's relatives the next day about the matter. Miss Parry had seen Higgins trying to extricate his car, persuaded him to let her back it out, and had seen him standing near the front of the car at some juncture of the proceedings; knew that someone was on the rear bumper, and stated that only one man fell during the episode. From this and other evidence the jury and court could reasonably infer that the man who was on the bumper and fell and hit his head and later was helped or carried to the hotel wall was Carl D. Higgins. Certainly there is no reason for inference in the record that two men fell and became unconscious, and were carried and placed in a sitting position against the hotel wall. We conclude that witness Coffey's. deposition, considered with other testimony in the case,

was some evidence of identification of the insured as the person Coffey testified he saw fall from the car bumper, and that insured, at the time, was engaged in the operation of his car in the sense of the policy herein.

Appellant's second point is that there was failure of proof that insured died of such injuries directly and independently of all other causes. It argues that the certificate of death, signed by a deputy coroner, rather than by an attending physician, was incomplete, hearsay and inadmissible; that it was the only evidence in the case that the death of the insured was due to the injuries.

The death certificate was signed "Victor B. Buhler". Following the signature there appear on the signature line the printed words "(M. D. or other)", with a slight extension of the line beyond. Across part of the space for medical data pertaining to date and hour of death, and last attendance, was written diagonally, "Deputy Coroner". The certificate was duly certified by the State Registrar. Its introduction was objected to only on the grounds that it did not tend to prove or disprove any issue in the case, and contained some hearsay. The objection was overruled. There was no specific point made thereon in the motion for new trial.

Section 9781, R. S. Mo., 1939, makes a copy of the certificate of death, when properly certified, *prima facie* evidence of the facts therein stated. If there is an attending physician, he must sign the certificate of death. O'Donnell v. Wells, 323 Mo. 1170, 21 S. W. 2d 762. The certificate in the instant case purports to be a medical certification and appears to be in the same handwriting as the answers to preceding questions "immediate cause of death", "subdural cerebral hemorrhage" "Due to Fracture of the skull", Due to injury by unknown means". In Simpson v. Wells, 292 Mo. 301, 237 S. W. 520, the signature of the person signing the death certificate was followed by "M. D. Deputy Coroner". The court held that since the deceased had died in a hospital one week after being injured in a street car accident, the signer of the certificate was evidently an attending physician and not a deputy coroner. There is no evidence that the signer of the certificate in this case was not the attending physician. There is nothing to rebut the apparent inference that the words "Deputy Coroner", written over some of the questions and answers, have application only to those questions which pertain to the place, date and hour of death. The presumption of regularity in such solemn instruments obtains. Gass v. Evans, 244 Mo. 329, 149 S. W. 628, 633. We hold that the trial court did not err in admitting the death certificate.

Appellant's third point is that plaintiff's Instruction 2 was erroneous in the inclusion of any definition of the term "intoxicated or under the influence of intoxicants" and, further, that the definition contained was incorrect and imposed upon defendant a greater burden

of proof than the law requires. Plaintiff's general Instruction 1 had directed a verdict in his favor if the jury found the facts as therein stated "unless you further find that at the time the said Carl D. Higgins received such injuries he was intoxicated or under the influence of intoxicants as defined in other instructions given". Plaintiff's Instruction 2, in part, was as follows:

"The court instructs the jury that the phrase 'while intoxicated or under the influence of intoxicants' as used in other instructions given you herein means, that prior to the time the deceased sustained the injuries from which he died, if you so find, he must have taken enough intoxicants to have produced at the time he fell and was injured as set out in instruction No. 1, if you so find, an undue and abnormal condition disturbing the normal action of his physical or mental faculties".

The instruction thereupon proceeded to place the burden on defendant to prove such condition of insured as defined. Objection was made to the definition aforesaid as improper and defendant declined to offer any instruction defining the terms mentioned, but suggested to the court that if any definition be permissible it should be that plaintiff could not recover "if his intoxication impaired in any degree the abilities of the insured to care for himself". It further objected to the burden imposed on the defendant by the instruction to prove the condition of insured as defined.

The burden was on defendant to prove that insured died under conditions which made his death a risk not assumed by the policy. Reddick v. Northern Accident Co., 180 Mo. App. 277, 165 S. W. 354. Defining the words of the policy relative to intoxication or influence of intoxicants was, under all the circumstances in evidence, not an abuse of the discretion of the trial court if the definition given is not incorrect and misleading.

Appellant quotes State v. Reifsteck, 317 Mo. 268, 295 S. W. 741, wherein the Supreme Court said that: "Everyone knows that the words (intoxicated condition) refer to the impaired condition of thought and action and the loss of the normal control of one's faculties, caused by imbibing vinous, malt or spirituous liquors". It contends that the definition in the instruction before us required a showing of a greater degree of intoxication or influence of intoxicants by the use of "undue and abnormal". It argues that one is intoxicated if there is any degree of impairment of thought or action, or any loss of normal control of the faculties. We fail to see any material difference, unless it be in appellant's favor, in a condition described as "if his intoxication impaired in any degree the abilities of the insured to take care of himself", as suggested by appellant, or an "impaired condition of thought and action and the loss of the normal control of one's faculties, caused by imbibing * * * spirituous liquors", stated by the Supreme Court, and a condition

wherein one "must have taken enough intoxicants to have produced at the time he fell * * * an undue and abnormal condition disturbing the normal action of his physical or mental faculties", as contained in the instruction under consideration. The instruction required merely a condition caused by intoxicants sufficient to disturb the normal action of the physical or mental faculties of the insured. If this called for a different degree of alcoholic effect, it was a lesser one than defendant suggested and in its favor. We hold that Instruction 2 was not erroneous.

Appellant's last point is that the verdict was improper, not responsive to the pleadings, and not in compliance with the Code of Civil Procedure. Appellant argues that, since this is an action for a declaratory judgment, plaintiff was not entitled to trial by jury as a matter of right, and at most the court should have submitted only issues of fact to the jury for special findings, and should not have authorized a general verdict. It asserts, further, that plaintiff has waived his right to a general verdict of a jury by asking the court to declare the liabilities of the defendant and the rights of the plaintiff. It argues also that the verdict rendered was improper for want of specific interrogatories on specific issues. It contends that the court should have refused the verdict and entered judgment for the defendant. It complains, too, that the court made no order adopting the verdict and that the verdict could only be advisory.

The prayer in plaintiff's petition was that the court submit the issues to the jury for findings of fact, and that the court then determine the liability against the defendant on said policy of insurance, and determine and declare the rights of plaintiff and defendant thereunder, and for costs. The court instructed the jury that if it found for the plaintiff its verdict should be in the following form: "We, the jury, find the issues herein for the plaintiff. ———— Foreman". A like form was given the jury for a finding for defendant. The verdict read: "We, the jury, find the issues herein joined for the plaintiff".

After the instructions had been determined by the court and ready to be read to the jury, the defendant, by its counsel, orally asked the court to submit four specific questions of fact to the jury. The court inquired if the counsel had prepared instructions embracing the questions, and counsel replied that he had not. The plaintiff objected to the proposed questions for the reason that defendant was not entitled thereto; that they had not been prepared and presented in form; that they did not embrace all the elements of the other instructions, and that the same would be confusing along with the other instructions. The court did not submit the specific questions so requested. On motion for retrial defendant included its objections to the court's refusal to submit the specific questions, and makes the same point here.

Section 106 of the Code of Civil Procedure, Laws of Missouri, 1943, page 386, provides that the verdict of a jury is either general or special, and defines a general verdict as one by which the jury pronounces generally on all or any of the issues, and a special verdict as one by which the jury finds the facts only, leaving the judgment to the court. Section 107, provides that in every issue for the recovery of money only, the jury shall render a general verdict. Section 108 provides that in all other cases, if at any time during the progress of any cause, it shall, in the opinion of the court, become necessary to determine any fact in controversy by the verdict of a jury, the court may direct an issue or issues to be made. Section 111 requires the jury to assess the amount of money in an action for the recovery of money only. Under Section 109, no other issue shall be determined by the jury except as directed by the court. Section 1134, R. S. Mo., 1939, a part of the Declaratory Judgment Act, provides that when a proceeding under that act involves the determination of an issue of fact, such issue may be tried and determined in the same manner as issues of fact are tried and determined in other civil actions in the court wherein the proceeding is pending.

A proceeding for a declaratory judgment under our statutes is *sui generis* and is not of itself strictly either legal or equitable, although its historical affinity is equitable. Liberty Mutual Ins. Co. v. Jones, 344 Mo. 932, 955, 130 S. W. 2d 945; Borchard on Declaratory Judgments, 2d ed. page 399. Plaintiff's action here is evidently not one for the recovery of money only. If plaintiff's action in the instant case is considered as one at law, it is not subject to objection because a declaratory judgment is asked. Section 1126, R. S. Mo., 1939. But if the action is one at law, both plaintiff and defendant would be entitled to a determination of the issues of fact by a jury, although a declaratory judgment was prayed. State ex rel. U. S. Fire Ins. Co. v. Terte, 351 Mo. 1089, 1099, 1100, 176 S. W. 2d 25; Aetna Life Ins. Co. v. Howard, 300 U. S. 227, 57 S. Ct. 461; Borchard, Declaratory Judgments, 2d ed. pages 400, 401. If the complaint in such an action is one in equity, then the chancellor could in his discretion submit such issues of fact to a jury and accept or reject its findings in whole or in part, and the verdict would be advisory only, as always in equity.

But a jury determination of all the issues of fact was awarded the defendant here, under instructions of the court. The refusal by the court to submit the specific questions orally requested by defendant was not error. Interrogatories are not required in such actions under the Missouri Act as they are by Section 3 of the Federal Declaratory Judgment Act. Judicial Code, Sec. 274d, 28 U. S. C. A. Sec. 400. Instructions given in this case submitted all the essential facts necessary for the court's later determination therefrom of the liability of the defendant under the policy, and to declare the

rights of the plaintiff in the premises. Nor was it necessary for the court to make a separate order adopting the jury's verdict before rendering the judgment thereon, as the judgment in accordance with the verdict is sufficient record of such adoption.

We believe the verdict was no less a special verdict although the amount of recovery was not calculated and determined by it, or the future installment payment obligations under the contract. In order to render a special verdict the jury could and should pass on only such issues of fact as directed by the court. Section 108 of the Code of Civil Procedure, supra. Section 1134 of our statutes requires the court to have the facts determined in such actions as in other civil actions. It was not intended that the action for declaratory judgment should interfere with the existing right of a trial of the facts by jury. Borchard on Declaratory Judgments, 2nd Ed. page 401; State ex rel. U. S. Fire Ins. Co. v. Terte, supra. If the complaint be one at law, as we believe the present one to be, and no equitable defense is made or affirmative relief in equity is asked by the defendant, then the parties have a right to a determination of the facts by a jury, but the verdict would still necessarily be a special verdict, since under the Declaratory Judgment Act, Article 14, Chapter 6, R. S. Mo., 1939, the determination of the further issues, namely the rights, status and other legal relationship of the parties under the determined facts is for the court. Thus, the court, in the instant case, in order to terminate the controversy and to "remove uncertainty" over the present and future obligations under the policy, properly reserved for itself the computation of the total amount of the accrued installments due under the contract, the interest thereon, and the total amount yet to accrue, and the amount and date of each monthly installment thereof for the ensuing 41 months until full payment, and reserved for itself the appropriate judgment in the ause. Borchard, Declaratory Judgments, 2d Ed. page 402. The Declaratory Judgment Act of Missouri must be liberally construed, Section 1137, R. S. Mo., 1939; The verdict here is, in our opinion, not subject to the objections noted.

We find no substantial error in the trial of this cause. The judgment is affirmed. All concur.