HOLMAN ENTERPRISE TOBACCO WAREHOUSE et al., Appellants,

v.

Dennis W. CARTER et al., Appellees.

Supreme Court of Kentucky.

March 26, 1976.

462

Norman E. Harned, Cole, Harned & Broderick, Bowling Green, for appellants.

Harold D. Ricketts, J. Reid Caudill, Bowling Green, Cyril Shadowen, Asst. Counsel, Dept. of Labor, Louisville, for appellees.

STERNBERG, Justice.

This is a workmen's compensation case. Appellee Dennis W. Carter sustained a work-connected back injury on November 11, 1972, while working for appellant Holman Enterprise Tobacco Warehouse, in Bowling Green, Kentucky. Carter is a full-time farmer and sharecropper, but for many years has worked in a warehouse during the tobacco season, which normally extends from mid November to the latter part of the following January or early part of February.

As a result of the accident, the Board found that:

Carter became occupationally totally disabled for an indeterminate period of time;

Carter suffered no active occupational disability immediately prior to the accident;

Carter should recover of his employer the sum of $60 per week for an indeterminate period, not to exceed 425 weeks.

As a result of the findings, the Special Fund was dismissed as a party to the action.

The employer and its insurance carrier filed an appeal in the Warren Circuit Court. The action of the Board was affirmed. Thus, this appeal.

Carter is 57 years of age, has a sixth grade education, is married, and has four children, one of whom is a minor. During the 12 months immediately preceding his injury Carter not only had sharecropped but had done some farm work for which he was paid compensation by the day. However, the evidence does not disclose the amount of money claimant received from this source; therefore, it cannot be considered. On one of the farms he was furnished a house in which he and his family lived. During his seasonal work for appellant he earned approximately $90 to $95 per week for a six-day work week. Carter and his wife filed a joint income tax return for 1972, which disclosed that his net farm income was $1,259, his income from seasonal work $512, and his wife's income $4,039.

The first issue is directed at the inclusion of farm income as wages. The issue is well taken. This is a matter of first impression with this court.

Claimant is engaged in an occupation that is exclusively seasonal. The formula on which compensation is computed is thus set out in KRS 342.140(2). This statute reads as follows:

"(2) In occupations which are exclusively seasonal and therefore cannot be carried on throughout the year, the average weekly wage shall be taken to be one-fiftieth ($\frac{1}{50}$) of the total wages which the employe has earned from all occupations during the twelve (12) calendar months immediately preceding the injury."

It does not use the words "salary" or "income", but it limits the formula to wages. The word "wages" is defined by KRS 342.-140(6) as follows:

"The term "wages" as used in this section and KRS 342.143 means, in addition to money payments for services rendered, the reasonable value of board, rent, housing, lodging, and fuel or similar advantage received from the employer, and gratuities received in the course of employment from others than the employer to the extent such gratuities are reported for income tax purposes."

Workmen's compensation benefits are predicated on the employer-employee relationship, and we have consistently excluded "independent contractors" and those persons engaged in agriculture (KRS 342.-005). We must bear in mind the statutory admonition for liberal construction (KRS 342.004). It has been held that under the

Unemployment Compensation Act money earned by self-employed persons cannot in any way be considered "wages". *Mississippi Employment Security Commission v. Medlin,* 252 Miss. 146, 171 So.2d 496; *Micca v. Administrator, Unemployment Compensation Act,* 26 Conn.Sup. 16, 209 A.2d 682.

In *Reddick v. Northern Accident Co.,* 180 Mo.App. 277, 165 S.W. 354, the court held that farm income was not wages so as to be entitled to recover from loss of earning capacity by reason of a personal injury.

In 99 C.J.S. Workmen's Compensation § 294, it is stated:

*"Employments not within act, or not insured.* In case of concurrent employments, each employment considered must be such as would come within the scope of the act; and where in his employment by one employer the employee is not covered by compensation insurance, his salary therein will not be included with his salary in another employment with another employer, in which he is covered by such insurance, in determining the basis of the payment of compensation for an injury in the latter employment.

\*    \*    \*    \*    \*    \*

*"Employee's separate business.* The fact that the injured employee enjoys a profit from a separate business of his own does not deprive him of the right to compensation; nor does income from a partnership in addition to earnings as an employee thereof affect the right of an injured employee to compensation. However, profits from a business enterprise of his own are not to be considered in determining the average weekly wage or earning capacity, although it has also been held that the earnings of a claimant from an outside enterprise may properly be considered in determining his average wages."

This court, in considering whether a tobacco crop was wages so as to be exempt from a garnishment, said in *Roberts v. Frank Carrithers & Bros.,* 180 Ky. 315, 202 S.W. 659:

" \*    \*    \* Hence a tobacco crop, which a farmer grows upon his own account and as a business venture of his own, could not in any event be wages earned by him, except the word "wage" should be used in a figurative and not a literal sense. \*    \*    \* "

■ We do not find, even with the most liberal construction, that farm income can be considered wages within the provisions of KRS 342.140(2).

The next issue is the propriety of the Board's failure to apportion any of the award to be paid by the Special Fund. There is no controversy over the injury. The controversy addresses itself to whether Carter had an active disabling preexisting condition.

In 1959, while working for the Field Packing Company, claimant slipped on slick concrete. He went to a doctor who gave him some pills and he recovered without any further difficulty. X-rays made on February 2, 1959, revealed an old gunshot wound, no recent reactive change, and the lumbar spine showed the body and intervertebral spaces to be well maintained.

On May 31, 1963, Carter had a work-related back injury, for which he filed a claim with the Workmen's Compensation Board for permanent total disability. The claim was settled for 10% permanent partial disability and claimant was paid $1,300. Carter claims that thereafter he was fully able to do hard manual labor. He not only worked as a common laborer for hire but did general farm work, which in and of itself is an arduous task. During Carter's tenure with appellant, which extended over a period of 15 years, he had done his work so well that he was elevated from just a tobacco handler to a minor supervisory position.

Dr. Frank L. Buono, who testified for Carter, first saw him on January 15, 1973, as a referral from Dr. Beasley, of Franklin, Kentucky. He treated Carter by medication until July 20, 1973. On July 22, 1973, claimant was hospitalized and a myelogram showed a ruptured disk. On July 25, 1973, an operation was performed removing the disk between vertebrae L5 and S1 and an

exploratory was made of the space between vertebrae L4 and L5. The disk there was normal. Carter remained hospitalized until August 3, 1973. Dr. Buono testified that as a result of the injury and operation claimant " * * * has some weakness in his leg;" has problems with his low back which are " * * * the arthritic changes and the ruptured disk. The same problems he had before." The range of motion in Carter's back was "quite good." Claimant still takes pain pills but has been released by the doctor to go back to work on light duty, which does not require lifting over 20 pounds. Dr. Buono at no time evaluated the percentage, if any, of disability suffered by claimant.

Dr. K. Armand Fischer was appointed by the Board to examine the claimant. On December 16, 1974, he took a case history from claimant and made the requested examination. As a result thereof, he reported to the Board that " * * * (i)f this patient was able to work and do laboring work from 1963 thru 11/11/72, he apparently did not have any disabling factors with his back, but he had an underlying diseased condition of his spine; namely, arthritis with degenerated discs. Apparently the accident of 11/11/72 brought this condition into disabling reality. * * * " The doctor diagnosed Carter as having no active disability prior to the trauma of November 11, 1972; that as a result of this last injury Carter has 40% partial permanent disability to the body as a whole. Dr. Fischer attributed 20% as a result of the injury of November 11, 1972, and 20% to the arousal of a dormant pre-existing disease condition into disabling reality. His report was filed with the Board on December 20, 1974. The employer's motion for an extension of time to review the report so as "to determine if his deposition should be taken" was granted. However, Dr. Fischer's deposition was neither taken nor were any exceptions filed to the report. Dr. Fischer's report provides the only medical testimony which evaluates claimant's disability.

The medical testimony discloses that Carter's functional disability is the result of the trauma of November 11, 1972, and from a non-apportionable pre-existing disease condition (arthritis with degenerated disk). *Young v. Bartley,* Ky., 472 S.W.2d 262; *Young v. Charles,* Ky., 471 S.W.2d 711; and *Giles Industries, Inc. v. Neal,* Ky., 471 S.W.2d 5.

The Board has the responsibility to translate functional disability into occupational disability. *Mitsch v. Stauffer Chemical Company,* Ky., 487 S.W.2d 938. However, the Board was not required to translate the percentage of functional disability into the same percentage of occupational disability. *Young v. Campbell,* Ky., 459 S.W.2d 781. In *Young v. Fulkerson,* Ky., 463 S.W.2d 118, we said:

" * * * the Board is to ascertain and fix the degree of occupational disability which existed immediately prior to the subsequent injury without regard to the effect of the subsequent injury. The percentage of occupational disability which existed immediately prior to the subsequent injury is noncompensable and must be excluded from any award. * * * "

The award of the Board was wholly in accord with the medical findings of Dr. Fischer. Neither the doctor nor the Board gave any effect to the permanent partial disability that Carter sustained in 1963. The Board bottomed its finding of total permanent disability on the whole-man doctrine, and it placed the responsibility on the employer to pay the whole award. The philosophy of the whole-man theory is simply that, as between the employer and the employee, a recovery by the employee for a permanent injury is not affected by his previous condition.

In *International Harvester Company v. Poff,* Ky., 331 S.W.2d 712, this court was confronted with a situation where an employee (Poff) has sustained the loss of an eye which resulted in 25% permanent partial disability to the body as a whole, and he received full compensation for this injury. Four years later Poff received another injury which resulted in total permanent dis-

ability to the body as a whole. We approved an award of the Board that ordered the company to pay the employee total disability compensation, and we determined that the company should not be permitted to deduct the amount paid Poff for his first injury. In the course of the opinion, we said:

"In the case at bar we have a finding of the Board, based upon competent and sufficient evidence, that Poff's injury of February 1, 1956, in and of itself, produced total and permanent disability, which required an award to be made under KRS 342.095. It is the general rule that any finding of the Board on a question of fact will not be set aside on an appeal to either the circuit court or this Court if, as is the situation here, there is any substantial evidence of probative value to support it. * * *"

The answer to the present issue is to paraphrase the above quotation. In the case at bar we have a finding of the Board, based upon competent and sufficient evidence, that Carter's injury of November 11, 1972, in and of itself, produced total and permanent disability, which required an award to be made under KRS 342.095. It is the general rule that any finding of the Board on a question of fact will not be set aside on an appeal to either the circuit court or this court if, as is the situation here, there is any substantial evidence of probative value to support it.

Insofar as the judgment of the Warren Circuit Court permits the inclusion of farm income as wages in determining the amount of an award under KRS 342.140(2), it is reversed; in all other respects, it is affirmed.

All concur.