## JOHNSON COUNTY v. CROSIER.
### No. 2784.

Court of Civil Appeals of Texas. Waco.
April 15, 1948.

Rehearing Denied May 20, 1948.

Roy Anderson and Walker & Baker, all of Cleburne, for appellant.

R. L. Crosier, of Dallas, pro se.

LESTER, Chief Justice.

The nature and result of this suit as related by the defendant and agreed to by the plaintiff as being correct will be adopted.

This is a suit by R. L. Crosier, the former County Attorney of Johnson County, against the County for additional salary claimed to be owing to him by the County for each of the years 1937 to 1942, inclusive. The trial court held that the plaintiff's claim for additional salary for each of the months from January 1, 1937, to June 30, 1940, was barred by limitation. From the judgment for the plaintiff for the additional salary claimed by him for the months from July 1, 1940, to December 31, 1942, plus interest, aggregating $1693, the defendant appeals, and asks the court to reverse and render judgment. The parties will be designated as in the trial court.

The defendant's first point is that the Commissioners Court, in fixing the salary of the County Attorney, could not take into consideration as a basis therefor the uncollected fees earned by the plaintiff during the year 1935, but was confined solely to the amount of fees actually collected by him.

Article 3912e, sec. 13, Vernon's Revised Civil Statutes, provides for the manner of fixing the amount of salary for each of the officers named therein, and in part reads:

"Each of said officers shall be paid in money an annual salary in twelve (12) equal installments of not less than the total sum earned as compensation by him in his official capacity for the fiscal year 1935, and not more than the maximum amount allowed such officer under laws existing on August 24, 1935." This act is known as the "Officers' Salary Bill" and was passed by the legislature in 1935, same being chap. 465, p. 1762 of the Acts of the Second Called Session of the 44th Legislature. Sections 8 and 9 of said act amended Articles 3896 and 3897. Article 3896, after the amendment, in part reads: "Each district, county and precinct officer shall keep a correct statement of all fees earned by him and all sums coming into his hands as deposits for costs, together with all trust funds placed in the registry of the court, fees of office and commissions in a book or in books to be provided him for that purpose, in which the officer, at the time when such deposits are made or such fees and commissions are earned and when any or all of such funds shall come into his hands, shall enter the same." Article 3897, after said amendment, provides for the manner and form of sworn statements to be executed by each officer at the close of each calendar year, and reads: "Said report shall show the amount of all fees, commissions and compensations whatever earned by said officer during the fiscal year; and secondly, shall show the amount of fees, commissions and compensations collected by him during the fiscal year; thirdly, said report shall contain an itemized statement of all fees, commissions and compensations earned during the fiscal year which were not collected, together with the name of the party owing said fees, commissions and compensations."

Webster's New International Dictionary, 2nd Edition, defines the word "earn" as: "to merit or deserve, as by labor or services; to do that which entitles one to (a reward, whether the reward is received or not)."

Taking the act in its entirety and in light of the purpose for which it was passed, we are of the opinion that the legislature intended that the uncollected fees earned by an officer during said year should be

taken into account in determining the amount of salary that should be allowed. It is well known that many fees are not paid at the time the services are rendered by which said fees are earned and that under the law they all cannot be collected during the year in which they are earned, and in some instances fees, though earned, can never be collected. So we would be reluctant to hold that the legislature intended to deprive an officer of the benefit of fees that he had earned even though they were not collected during the year. Our view is that the uncollected fees earned during the year 1935 by the County Attorney, together with the fees earned and collected by him, less the expenses of his office, should have been used as a basis for fixing the amount of his salary. Our opinion in this respect is shared by the Attorney General of the State, who has consistently held since March 9, 1939, that both amounts should be included. Nacogdoches County v. Jinkins, Tex.Civ.App., 140 S.W.2d 901; Nacogdoches County v. Winder, Tex.Civ.App., 140 S.W.2d 972.

■ Defendant's second point is based upon the insufficiency of the evidence to support the trial court's judgment, in that the evidence regarding the County Attorney's fees for 1935 in the Justice Court cases shows only the number of cases disposed of and does not show the facts necessary to establish that the fees were legally allowable to him.

Before the trial of this case below the parties agreed to certain facts, subject, however, to all legal objections, and part of said agreement was that during the year 1935 the County Attorney of Johnson County disposed of 15 lunacy cases, 293 criminal cases by pleas of guilty and 3 criminal cases by conviction, and in each of such cases a fee of $10 was entered for the County Attorney; and in reference to the Justice Court cases it was agreed that there were enough pleas of guilty and convictions in misdemeanor cases (either without appeal or affirmed on appeal) during 1935 in the Justice Courts of said county that if a fee of $5 were allowed for the County Attorney in each of such Justice Court cases, such amount, plus the fees for the County Attorney in the County Court cases heretofore referred to, would exceed $5124.50. The above agreement and the findings of the trial court uses the phrase "or affirmed on appeal." We assume that it means final convictions, as cases appealed from the Justice Court to the County Court are tried de novo. The defendant made several objections to that part of the agreement in respect to Justice Court fees. Among them were that the plaintiff had not shown: (1) "that the County Attorney was present and represented the State upon the trial of the cases disposed of in the Justice Courts or that the County Attorney took some action in the cases for the State, or that the County Attorney was present and ready to represent the State at each regular term of the court in which such criminal actions were pending; (2) in which of the cases fees and fines were actually paid and in which cases the defendants therein laid out the fines in jail; and (3) in which of those cases or in how many of them the fee was properly allowable by law for the County Attorney in the case." The court overruled each of such exceptions.

Article 1068, Vernon's Texas Code of Criminal Procedure, provides: "If the defendant pleads guilty to a charge before a justice, the fee allowed the attorney representing the State shall be five dollars. The attorney who represents the State in a criminal action in a justice's court shall receive, for each conviction on a plea of not guilty, where no appeal is taken, ten dollars." Article 1070 provides: "(1) No fee shall be allowed a district or county attorney in any case where he is not present and representing the State, upon the trial thereof, (2) unless he has taken some action therein for the State, or (3) is present and ready to represent the State at each regular term of the court in which such criminal action is pending; provided, that when pleas of guilty are accepted in any justice court, at any other time than the regular term thereof, the county attorney shall receive the sum of five dollars. In no case shall the county attorney, in consideration of a plea of guilty remit any part of his lawful fee."

In order for a County Attorney to be entitled to fees in the Justice Court he must come within the provision of the above quoted Article 1070. It is undisputed that he was not personally present and representing the State upon the trial of all the cases disposed of by the various Justice Courts of the county, nor did he take some action therein for the State in all of such cases. The question now is, did he come within the terms of the next provision in said article in that, in 1935, the County Attorney was present and ready to represent the State at each regular term of the court in which such criminal actions were pending? The Honorable Gean Turner was County Attorney of Johnson County during the years from 1933 to 1936, inclusive, and the evidence shows that when he assumed his duties as County Attorney, and at various times thereafter, he called upon each of the justices and informed them that it was his desire to render all possible aid to them that he could in his official capacity, and requested each of them to call on him at any time they thought he could be of any assistance to them; that the most remote Justice Court from the County-seat was fifteen miles and that he could reach the same within twenty-four minutes. The evidence further showed and the court so found "that during the year 1935 the County Attorney visited each Justice Court in person one or more times and was ready to represent the State; at these visits he told the various justices of the peace that he would be available and ready to come to their courts to represent the State at any time he was needed and he was actually present in his office in Cleburne during the entire year to respond to any such call from any or all of the justices of the peace. He was not present in court when all of the cases in the Justice Courts were disposed of, but the evidence did not show how many of such cases were disposed of in his presence and how many were disposed of in his absence; that he was actually present when several Justice Court cases were disposed of but in most cases he was not present when the cases were disposed of; that at all times when he was not present in the Justice Court he was available in his office to respond and would have responded and appeared in such courts if he had been called upon or notified his presence was needed to represent the State."

Under the third clause or provision of Article 1070, in order for the County Attorney to be entitled to his fees in the Justice Court he did not have to be present and representing the State, nor was it necessary for him to take some action in the case on behalf of the State. Its only requirement is that he be present and ready to represent the State at each regular term of court in which such criminal action was pending. Suppose a County Attorney did appear before each Justice Court on the first day of its regular term and announced he was ready to represent the State. There would be many cases filed and disposed of by the Justice of the Peace after such date. It is a matter of common knowledge that criminal cases are filed and disposed of by a Justice Court on any day throughout the year except on Sunday, and it could not be contended that under this article the County Attorney would have to be physically present on each and every day that a criminal case was disposed of by the Justice before he would be entitled to his fee. It would be almost impossible or certainly impracticable for him to be present at all the courts of the county on the same day. It is also well known that up to the time of passing the Officers' Salary Bill that County Attorneys were required to perform many duties for which no compensation was allowed. Under clause No. 3 of said article he is not required to take any action in the case but only to be present and ready to represent the State at each regular term in order for him to be entitled to his fee. We are of the opinion that said article should not be construed so strictly as to require that the County Attorney should be physically present in court when each case was disposed of, but that a more liberal construction should be given thereto, and as long as the County Attorney was present in his office subject to call and was ready and willing to represent the State upon notice and could reach the court in a few minutes, and did comply with all requests made of him in this respect, he

would be considered present and ready to represent the State for all intents and purposes of said article.

Finding no reversible error, the judgment of the trial court is affirmed.