Neale A. and Jacqueline B. GOW,
Appellants Below, Appellants,

v.

DIRECTOR OF REVENUE, Appellee
Below, Appellee.

Supreme Court of Delaware.

Submitted: Oct. 18, 1988.
Decided: Jan. 20, 1989.
Reargument Denied:
April 7, 1989.

Jerome K. Grossman, of Young, Conaway, Stargatt & Taylor, Wilmington, for appellants.

Joseph Patrick Hurley, Jr., Deputy Atty. Gen., Wilmington, for appellee.

Before CHRISTIE, C.J., HORSEY and HOLLAND, JJ.

HOLLAND, Justice:

This is an appeal from the opinions and orders of the Superior Court in and for New Castle County, reversing the Tax Appeal Board of the State of Delaware ("Board"), and holding that (i) the Voluntary Termination Incentive ("VTI") payment received by the appellant, Neale Gow ("Gow"), was "compensation ... for personal services" and taxable by the State of Delaware under 30 *Del.C.* § 1122(b)(1); and (ii) the portion of the VTI payment taxable by Delaware was properly determined by the appellee, Director of Revenue for the State of Delaware ("Director"), based on the percentage of work performed by Gow in Delaware in 1982 rather than throughout his 35–year employment career. We conclude that the VTI payment was not "compensation ... for personal services" within the ambit of 30 *Del.C.* § 1122(b)(1). Accordingly, the decision of the Superior Court characterizing the VTI payment to Gow as compensation for personal services is reversed. Since we find that the VTI payment is not taxable by Delaware, it is unnecessary to address the manner of properly computing Gow's tax liability.

## The VTI Payment

The appellants, Gow and his wife, are residents of Pennsylvania. Gow worked for E.I. duPont de Nemours & Company ("DuPont") from 1948 until November 30, 1982. From March 1, 1948, until May 1, 1949 and July 1, 1979, through November 30, 1982, Gow worked in Delaware. From May 1, 1949, through June 30, 1979, Gow worked outside of Delaware. The Gows resided outside of Delaware throughout this entire period of employment.

DuPont initiated the VTI program in an effort to help deal with the permanent elimination of jobs designated as "excess" by site management. (Appendix I). The VTI program was not coupled with a threat of involuntary terminations or layoffs. The VTI program offered certain employees the option to retire early and commence receiving retirement benefits. In addition, those who elected to enter the VTI program would receive a VTI payment, which was the equivalent of the amount of one week's pay at the time of election, multiplied by the total number of years the recipient was employed by DuPont. The VTI payment could be received in installments or one lump sum, at the election of the recipient.

Sometime between September 15 and October 15, 1982, Gow elected to accept the VTI plan. Gow continued to work for DuPont until he retired on November 30, 1982. In January, 1983, Gow received a lump sum VTI payment in the amount of $45,549.00.

## Procedural History

Gow filed a Delaware Individual Part–Year/Nonresident Income Tax Return, Form 200–02, for the taxable year ending December 31, 1983. Gow did not report the VTI payment as income on the 1983 Delaware tax return. In 1984, the Director issued a Notice of Assessment stating that the VTI payment was compensation for personal services and therefore taxable by Delaware. On August 2, 1984, Gow filed a timely written protest with the Director. On October 22, 1984, the Director issued a Notice of Determination, denying Gow's protest, and affirming the proposed assessment. Gow then appealed that decision by

the Director to the Tax Appeal Board of the State of Delaware ("Board").

The Board, in its Decision and Order issued on March 17, 1986, decided that there were no personal services rendered by Gow for which the VTI payment was compensation. The Board also decided that to the extent *Tax Ruling* 82–7, Del.Tax. Rep. (CCH) ¶ 200–352 at 10,462 (Dec. 10, 1982) (Appendix II), holds that VTI payments are for personal services, or are attributable to employment, rendered in the State of Delaware and not required to be performed elsewhere, it is inconsistent with Title 30 of the Delaware Code. The Board concluded, therefore, that the VTI payment was not includible in the Gows' Delaware taxable income.

The Director appealed to the Superior Court, which reversed the decision of the Board that the VTI payment was not includible in the Gows' Delaware taxable income. The Superior Court then remanded the case to the Board for consideration of the Gows' argument, initially not addressed by the Board, that only a portion of the VTI payment should be included in their Delaware taxable income. On remand, the Board determined that the VTI payment should be taxed by Delaware based upon an apportionment of the days Gow worked outside of Delaware during his last year of employment. On appeal to the Superior Court by the Gows, that decision of the Board was affirmed. The Gows have now appealed to this Court.

### VTI Payments Made to Nonresidents Not Exempt from Delaware Tax as a Pension

 The primary issue on appeal is whether, and if so, to what extent, the VTI payment to Gow is taxable in Delaware [1] pursuant to 30 *Del.C.* § 1122(b)(1), which provides:

(b) *Income and deductions having [a] source within this State.*—Items of income, gain, loss and deduction derived

from, or connected with, sources within this State are those items attributable to:

(1) Compensation, other than pensions, as an employee in the conduct of the business of an employer, for personal services (i) rendered in this State, or (ii) attributable to employment in this State and not required to be performed elsewhere;

. . . . .

The Gows' first argument is that the VTI payment constitutes a pension, within the meaning of 30 *Del.C.* § 1122(b)(1) and, accordingly, is excludible from the income of nonresident VTI recipients which is taxable by Delaware. Noting that the word "pension" is not defined in the Delaware Code, the Gows argue that the VTI program is analogous to that which would be considered a pension plan under the United States Internal Revenue Code ("I.R.C.") and, therefore, should be considered a pension under Section 1122(b)(1) of the Delaware Code.

The Director contends that the VTI payment was not a pension. The basis of the Director's position is that a pension is generally considered to be compensation deferred as an inducement for the continued services of an employee. Since the VTI program's purpose was to induce retirement, in order that DuPont could streamline its operations by accelerating the attrition rate, the Director argues that the VTI program is the antithesis of a pension.

The Division of Revenue of the State of Delaware issued *Tax Ruling* 82–7. With respect to their classification as a pension, *Tax Ruling* 82–7 provides that the VTI "payments are separate from and in addition to any pension rights to which the employee is eligible. Accordingly, such payments do not constitute and cannot be considered the equivalent of pension income." *Tax Ruling* 82–7, Del.Tax Rep. (CCH) ¶ 200–352 at 10,462 (Dec. 10, 1982).

1. Section 1121 provides:
The taxable income of a nonresident individual shall be that part of his federal adjusted gross income derived from sources within

the State, determined by reference to § 1122 of this title, less the deductions and personal exemptions provided in this subchapter.
30 *Del.C.* § 1121.

As "an administrative regulation, [*Tax Ruling* 82–7] will carry the force and effect of law so long as it does not exceed the scope of the statute and is within the rulemaking authority of [the Secretary of Finance]." *Burpulis v. Director of Revenue*, Del.Supr., 498 A.2d 1082, 1085 (1985). We find that *Tax Ruling* 82–7 "falls squarely within the Secretary of Finance's rulemaking authority to promulgate the rules and regulations necessary to enforce the tax laws of our State." *Id., see also,* 30 *Del.C.* § 354. Thus, we are concerned here only with whether *Tax Ruling* 82–7 exceeds the scope of Title 30 of the Delaware Code.

Pension payments are excluded from taxable compensation by 30 *Del. C.* § 1122(b)(1). The Gows have correctly pointed out that the term "pension" is not defined in the statute; nor is the term "compensation." The general rule is that where a statutory term is not defined by the statute, the rules of construction require that the term be given its ordinary meaning. *See* 1 *Del.C.* § 303; *McGinnes v. Dep't of Fin.*, Del.Ch., 377 A.2d 16, 20 (1977). However, Title 30 has a specific statutory construction provision which provides:

Any term used in this chapter shall have the same meaning as when used in a comparable context in the laws of the United States referring to federal income taxes, unless a different meaning is clearly required. Any reference to the laws of the United States shall mean the Internal Revenue Code of 1954 [26 U.S. C.A. § 1 et seq.] and amendments thereto and other laws of the United States relating to federal income taxes, as the same may be or become effective, for the taxable year.

30 *Del.C.* § 1101.

The Gows contend that the term "pension" should be defined in the same way that it is defined under the federal income tax scheme. In making this argument, the Gows' reliance is placed on that portion of 30 *Del.C.* § 1101 which states: "[a]ny term used in this chapter shall have the same meaning as when used in a comparable

context in the laws of the United States referring to federal income taxes, unless a different meaning is clearly required." We have examined the various portions of federal law that have been cited by the Gows. We are not persuaded that those federal references define "pension" in a comparable context, as required by Section 1101. Therefore, that term will be given its ordinary meaning. 1 *Del.C.* § 303.

The term "pension" is ordinarily defined as a "[r]etirement benefit paid regularly (normally, monthly), with the amount of such based generally on length of employment and amount of wages or salary of pensioner. Deferred compensation for services rendered." *Black's Law Dictionary* 1021 (5th ed. 1979). This Court has also previously commented upon the term "pension" in a manner that is consistent with its ordinary meaning. In the context of an individual's right to a contributing pension, we have said "that pensions are a part of the compensation of an employee to which ordinarily he is as much entitled as he is to the wages he is paid for the work actually performed by him." *Dorsey v. State of Delaware ex rel. Mulrine*, Del.Supr., 283 A.2d 834, 836 (1971). In a different context, this Court stated that "in today's economy, the terms and conditions of an employer's pension plan play an important role in inducing a man to enter or continue in the service of that employer. In other words, it is a part of the consideration for the contract of hire." *In re State Employee's Pension Plan*, Del.Supr., 364 A.2d 1228, 1234 (1976) (quoting *Dorsey v. State of Delaware ex rel. Mulrine*, Del.Supr., 301 A.2d 516, 518 (1972)).

The VTI payment, in contrast to the ordinary meaning of the term "pension", was not deferred compensation for past services rendered. It was not paid to its recipient in return for prior faithful and continued employment. Rather, the VTI payment was paid as an inducement, to certain employees, to retire from their jobs in order to permanently eliminate jobs deemed to be excess, as part of an effort by DuPont to save money. The VTI payment was paid *in addition* to any deferred pen-

sion payments otherwise vested in the recipient.

We conclude that to the extent *Tax Ruling* 82–7 declines to treat VTI payments as pensions for purposes of Section 1122(b)(1), it does not exceed the scope of Title 30 of the Delaware Code. *Burpulis v. Director of Revenue*, 498 A.2d at 1085. Accordingly, to *that* extent, *Tax Ruling* 82–7 "carries the force and effect of law." *Id.* at 1087. Therefore, the Gows' argument that the VTI payment was exempt from taxation as a pension by Delaware, since he was a nonresident, must fail.

### VTI Payments Made to Nonresidents Not Taxable by Delaware as Compensation for Personal Services

Having determined that the VTI payment was not a pension, the next issue which we address is whether the VTI payment is "compensation ... as an employee, in the conduct of the business of an employer, for personal services (i) rendered in this State, or (ii) attributable to employment in this State and not required to be performed elsewhere" within the meaning of Section 1122(b)(1).

The Gows concede that the VTI payment is a form of compensation. However, they contend that the VTI payment is not compensation for personal services. According to the Gows, retiring from employment does not constitute a form of personal service. They argue that the VTI payment is actually a payment for the non-rendering of personal services. Therefore, the Gows suggest that the VTI payment would not be "compensation ... as an employee in the conduct of the business of [the Dela-

ware] employer for personal services." 30 *Del.C.* § 1122(b)(1).

The Director argues that the term "personal services" extends beyond work actually performed. He suggests that it includes everything for which compensation is paid as a result of the employer-employee relationship. The Director further argues that, under the federal tax scheme, the VTI payment is includible as part of the recipient's taxable income.

■ Once again, we begin our review with the position taken by the Division of Revenue of the State of Delaware. *Tax Ruling* 82–7 provides that the VTI payments are taxable as compensation for personal services within the ambit of 30 *Del.C.* § 1122(b)(1).[2] This determination was based upon the analogy that the VTI payments were equivalent or similar to severance pay. The Director argues that the analogy in *Tax Ruling* 82–7 is proper. In support of his position, the Director points out that the VTI payment would be taxable income under the federal taxation scheme, and therefore suggests that it requires similar treatment under the Delaware statute. The Director relies on 30 *Del.C.* § 1101.

Under the United States Internal Revenue Code, all items of gross income are taxable unless specifically excludible or deductible. Gross income is defined as "all income from whatever source derived including ... compensation for services." I.R.C. § 61 (1988). The Treasury Regulation explaining the term "compensation for services" includes within its definition "termination or severance pay." Treas.Reg. § 1.61–2(a)(1) (as amended in 1979). Thus,

---

2. *Tax Ruling* 82–7 provides, in pertinent part:

With respect to *nonresidents* working in Delaware, such voluntary termination incentive payments, which are similar to or equivalent to "severance pay," constitute income derived from Delaware sources since they represent compensation, as an employee in the conduct of the business of the employer, for personal services rendered in this State or attributable to employment in this State and not required to be performed elsewhere. The payments are for services rendered currently, with the amount of the payment being determined or measured by the number of years of employment with the company. The purpose of the

voluntary termination incentive policy is to encourage employees to voluntarily terminate employment so as to minimize involuntary terminations by the company for lack of work, which clearly evidences that the payments are made in the conduct of the business of the employer. Accordingly, the payments are derived from Delaware sources and will flow through and be includible in Delaware taxable income of such nonresident employees.

*Tax Ruling* 82–7, Del. Tax Rep. (CCH) ¶ 200–352 at 10,462 (December 10, 1982) (emphasis in original); *see also,* Appendix II.

if the VTI payment is properly characterized as a form of "termination or severance pay," it would be, as the Director points out, taxable by the federal government, as compensation for personal services.

However, contrary to the analogy drawn in *Tax Ruling* 82–7, and the Director's argument, we find that the VTI payment is not similar or equivalent to severance pay. Termination or severance pay is "the payment of a sum of money in addition to back wages or salary to an employee on termination by the employer of the employment relationship for reasons not attributable to the employee." 53 Am.Jur.2d, *Master and Servant*, § 81 (1970). The key distinction between the VTI payment and severance pay is that severance pay is paid pursuant to a *decision by the employer* to terminate the employment relationship. The VTI payment, in contrast, was paid pursuant to a voluntary *decision by the employee* to terminate the employment relationship.

There was no decision or threat made by DuPont to terminate its employment relationship with Gow. The very name of the VTI program—Voluntary Termination Incentive program—indicates that the decision to terminate the employment relationship is a voluntary decision made by the employee. We find that the VTI payment is simply not similar or equivalent to severance pay. Accordingly, the Director's reliance on the federal taxability of severance pay is misplaced. Moreover, an examination of another portion of the federal taxation scheme reveals why the VTI payments are not "compensation for personal services" within the meaning of the Delaware statute.

As we have noted, 30 *Del.C.* § 1101 provides that any term used in the personal income tax statute shall have the same meaning that it has when it is used in the United States Internal Revenue Code, in a similar context, unless a different meaning is required. To a certain extent, taxation of nonresident employees of a Delaware corporation by the State of Delaware is analogous to taxation by the Federal government of United States citizens or residents who live in foreign countries during all or part of a tax year. In the latter context, Section 911(d)(2) of the Internal Revenue Code defines the term "earned income," in part, as: "wages, salaries, or professional fees and other amounts received, as *compensation for personal services actually rendered.*" I.R.C. § 911(d)(2) (1988) (emphasis added). This language is strikingly similar to the provision in 30 *Del.C.* § 1122(b)(1) which taxes "compensation . . . for personal services (i) rendered in this State".

As Judge Learned Hand has stated "[w]ords are not pebbles in alien juxtaposition; they have only a communal existence; and not only does the meaning of each interpenetrate the other, but all in their aggregate take their purport from the setting in which they are used." *NLRB v. Federbush Co.*, 121 F.2d 954, 957 (2d Cir. 1941). We find that the term "compensation for personal services," in the context in which it is used in the Delaware statute, contemplates that those services which are taxable by Delaware must have been *actually* "rendered in this State." 30 *Del.C.* § 1122(b)(1). Therefore, under the Delaware tax law, compensation for personal services does not include amounts received for refraining from rendering personal services.[3] Thus, we conclude that the Dela-

3. Prior to its repeal by the Economic Recovery Tax Act of 1981, Pub.L. No. 97–34, Tit. I, § 101(c)(1), 95 Stat. 183 (1981), Section 1348 of the Internal Revenue Code was titled "50–Percent Maximum Rate on Personal Service Income". In the actual statutory provision and the regulations thereunder, a key definitional term was "earned income". Treasury regulation 1.1348–3(a) stated that:

"[f]or purposes of section 1348 and the regulations thereunder, the term 'earned income' . . . includes . . . [w]ages, salaries, professional fees, bonuses, amounts includible in gross income under section 83, commissions on sales or on insurance premiums, tips, and other amounts received, actually or constructively, as *compensation for personal services actually rendered* regardless of the medium or basis of payment. . . . The term also *does not include amounts received for refraining from rendering personal services* or engaging in competitive activity or amounts received as consideration for the cancellation of an employment contract."

Treas.Reg. § 1.1348–3(a)(1)(c) (1976) (emphasis added). The validity of this regulation was up-

ware statute does not, as the Director would have it, provide for the taxation of *any* compensation that flows from the employer-employee relationship. Only compensation received by the nonresident taxpayer in return for personal services actually rendered or performed[4] in Delaware, may be taxed under Section 1122(b)(1).

In this case, no personal services were actually rendered by Gow for which the VTI payment was compensation. The VTI payment was not paid as compensation for prior personal services rendered. The VTI payment was not attributable to the physical or mental act of making the decision to "opt" into the VTI program. Nor was it attributable to the services rendered by Gow during the short period after he made the VTI election.

Once he made the VTI election, Gow did not have to work or perform any services for DuPont in order to receive the VTI payment. The VTI payment was not in consideration for rendering personal services, but was in consideration for refraining from rendering personal services. We hold that the VTI payments are not includible in a nonresident's income which is taxable by Delaware as compensation for personal services under 30 *Del.C.* § 1122(b)(1).

*Burpulis* requires that *Tax Ruling* 82–7 be given the effect of law provided that it is not inconsistent with Title 30 of the Delaware Code. *Burpulis v. Director of Revenue*, 498 A.2d at 1085. We find that *Tax Ruling* 82–7, to the extent that it characterizes VTI payments as a form of severance pay and taxable as compensation for personal services, is inconsistent with, and exceeds the scope of 30 *Del.C.* § 1122(b)(1). *Burpulis v. Director of Revenue*, 498 A.2d at 1085.

### Conclusion

The VTI payment is not properly characterized as a pension, nor as compensation for personal services. To the extent *Tax Ruling* 82–7 is inconsistent with this conclusion, it will be denied the force of law. Since we have determined that the VTI payment is not compensation for personal services, it follows that no portion of the VTI payments by DuPont to nonresidents is taxable by the State of Delaware. The judgment of the Superior Court to the contrary is REVERSED.

### ON MOTION FOR REARGUMENT

This 7th day of April, 1989, the Court has before it the Director's Motion for Reargument. In his motion, the Director argues that, by interpreting the term "persona services" to encompass a requirement of actual performance in Delaware, this Court has rendered the language of subsection (b)(1)(ii) of 30 *Del.C.* § 1122 meaningless. Our conclusion that 30 *Del. C.* § 1122(b)(1) requires that personal services actually be performed was not intended to vitiate subsection (b)(1)(ii). To eliminate any confusion in that regard, we will expand upon our construction of 30 *Del.C.* § 1122(b)(1).

We have already concluded that the actual performance of "personal services" is a statutory prerequisite for both subsections of 30 *Del.C.* § 1122(b)(1). Our construction of 30 *Del.C.* § 1122(b)(1), based on a literal reading, concluded that the words "for personal services" must be read before both "(i) rendered in this State" and "(ii) attributable to employment in this State and not required to be performed elsewhere." Therefore, personal services that are actually rendered in this State are taxable under 30 *Del.C.* § 1122(b)(1)(i). However, the fact that personal services attributable to employment in this State are performed by a nonresident outside of Delaware, does not necessarily preclude Delaware from

---

held in *Kreider v. Comm'r*, 762 F.2d 580 (7th Cir.1985). This authority remains relevant for present purposes because the definitions in Section 1348 were tied to Section 911. *See* I.R.C. § 1348 (1981).

**4.** Our conclusion is reinforced by 30 *Del.C.* § 1122(b)(1)(ii) which provides for the taxation

of personal services "attributable to employment in this State and not required to be *performed* elsewhere." The verbs "rendered" and "performed" in the Delaware statute both contemplate action. Refraining from rendering personal services is passive.

taxing that nonresident employee under 30 *Del.C.* § 1122(b)(1)(ii).

The continued operation of subsection (b)(1)(ii), which is consistent with our interpretation of the statute, is illustrated by a hypothetical example from this case: If Mr. Gow, while a salaried employee of DuPont in Delaware and a Pennsylvania resident, *voluntarily* took work home with him and performed it in Pennsylvania, his "compensation ... as an employee" for that work would not be taxable under 30 *Del.C.* § 1122(b)(1)(i) because the personal services were not actually rendered in this State. However, it would be taxable in Delaware under 30 *Del.C.* § 1122(b)(1)(ii) because it was "for personal services [actually performed] ... (ii) attributable to employment in this State and *not required* to be performed elsewhere." Personal services that are attributable to employment in Delaware and actually performed in another state are constructively performed in Delaware, if those services are not *required* to be performed elsewhere by the Delaware employer. 30 *Del.C.* § 1122(b)(1)(i).

In this case, it was not relevant whether Gow elected to enter the VTI program while he was in Delaware or while he was in Pennsylvania, because we found that the exercise of his election was not the performance of a personal service.[5]

The Director's Motion for Reargument in DENIED.

## APPENDIX I

*Voluntary Termination Incentive (VTI)*
General

The purpose of the Voluntary Termination Incentive (VTI) program is to help site management deal with the permanent elimination of jobs designated as excess by site management. When implemented by site management, the VTI program provides for payment of the incentive (outlined below) in such work unit(s) and for such time period(s) as site management decides

appropriate. The VTI is subject to collective bargaining at sites where employees are so represented. It also is subject to such administrative rules as site management may prescribe. Rights of modification or termination by the Company are reversed.

You may volunteer to terminate your employment and become eligible for a VTI *if* your termination continues a job for another employee who otherwise would be excess as a result of the announced permanent reduction of force. To volunteer for a VTI, you must apply for it in writing before the site management designated closing date. Volunteers for a VTI will be selected in the order of their Company service or local seniority, whichever is designated by site management. Your voluntary termination may be delayed by management for up to six months if your services are judged to be critical.

If you receive a VTI, you are not eligible for severance pay or optional retirement, nor will you have recall rights. However, if you have met the age/service requirements, you are eligible for voluntary retirement or vested rights to deferred pension payment.

*Amount and Payment of VTI*

The amount of VTI will be up to one week's pay for each year of Company service (a partial year is figured to the nearest month). The VTI will not be offset by any severance pay or previous VTI you may have received in the past. It also is in addition to any pension rights for which you may be eligible. Your VTI is subject to income tax withholding.

When you sign up as a volunteer to terminate with a VTI, you will need to choose how you want your VTI paid to you from whichever of the following alternatives are authorized by site management:

—lump sum at termination;

—lump sum deferred until January of the year following termination;

---

5. We note that, contrary to the Director's suggestion, the VTI payment to Gow is clearly distinguishable from the payment of a bonus or vacation pay by a Delaware employer to a nonresident employee. The latter types of payment are additional compensation for personal services actually rendered in the past.

—twelve equal monthly installments starting at termination; or

—twenty-four equal monthly installments starting at termination.

Once you make this choice, you can't change it. If you are reemployed by any Du Pont location before you have received complete payment of your VTI, payment of the unpaid balance will be stopped; however, you will not have to pay back any VTI amount you have already received.

You will not be entitled to a VTI if you resign in anticipation of a permanent reduction of force.

### ERISA Administrative Matters

The Employee Retirement Income Security Act of 1974 (ERISA) defines the VTI program as an employee welfare benefit plan. Under ERISA every employer sponsoring benefit plans must provide its Employer Identification Number; Du Pont's is 51–0014090. The VTI program has been assigned plan number 509. These numbers are used by the federal government in keeping track of employee benefit plans and should be used if you have any reason to correspond with the government about the VTI.

Du Pont is the administrator and official sponsor of the VTI program. Legal process may be served on E. I. du Pont de Nemours and Company, 1007 Market Street, Wilmington, Delaware 19898 (302/774–1000). Records for the VTI are maintained on a calendar year basis.

### ERISA Claims Procedure

ERISA provides that an employer must advise employees of a claims procedure to be followed if any employee believes that she or he has been denied appropriate benefits. Under ERISA's claims procedure, benefit claims must be made in writing to your supervision. If you elect to submit a claim under ERISA, you should describe the benefit you're claiming, the period of time for which you're claiming it, and the amount of payment you expect.

If your claim doesn't include the right information, you'll be told about it in writing. You'll also be told what you need to do to get your claim processed.

If your claim is denied, you'll be told in writing within 90 days after your claim is received. That reply will include:

—the specific reasons for the denial;

—reference to the provisions of the VTI program;

—a description of what additional information is necessary and why; and

—a copy of this procedure or comparable information about the steps you need to take to resubmit the claim.

If the reply can't be made within 90 days, you'll be given a written notice explaining the reasons. An extension will not be for more than another 90 days.

If your claim for a benefit is denied, you may write to your supervision requesting a review. You'll need to do that within 60 days of the denial.

In your request, you'll want to list the issues and comments you'd like to have considered. If you prefer, you can have an authorized representative send in the request on your behalf. You or your representative may, at a reasonable time and place, inspect relevant documents which may affect your claim.

Within 60 days after your request for review is received, you'll get the decision in writing. In the case of a continued denial, you'll be given the specific reasons and the provisions on which the denial is based. If the review can't be made within 60 days, you'll be notified in writing. Again, that notification will outline the reasons behind the delay.

### Your Rights Under ERISA

As a participant in the VTI program you have certain rights:

First, without charge, you may *examine documents* under which the benefits are maintained. These include the plan language. You may also examine forms filed with the Internal Revenue Service (such as annual financial reports on Form 5500). These documents and forms are maintained for inspection at company headquarters (*Room DG–6 in the Du Pont Building,* Wilmington, Delaware), and will be made available at employment sites on written request to supervision.

Second, you may obtain copies of these documents and forms by making a written request to supervision. You pay the cost of reproducing them, which won't exceed 10 cents per page.

Third, ERISA gives you the right to receive copies of documents and information in a reasonable time (30 days) following receipt of your written request.

Fourth, if you think the response to your request for material is inadequate, your claim for benefits is incorrectly denied, or the persons responsible for administering the benefits act improperly, you may bring legal action.

Fifth, direct questions about your benefits to your supervision. Questions about your rights under ERISA may be directed to the nearest area office of the U.S. Labor/Management Services Administration, Department of Labor.

May 21, 1982

### APPENDIX II

#### Tax Ruling 82–7

A question has been raised concerning the Delaware income tax treatment of voluntary termination incentive payments received by non-resident individuals from a Delaware employer pursuant to a voluntary termination plan adopted by the employer. Under the plan, those employees who apply and qualify for voluntary termination will receive an amount (incentive payment) equal to one weeks' pay for each year of employment with the company. The employees may elect to receive the payment under one of the following options: (1) lump sum at the time of termination, or (2) lump sum deferred to the year following termination, or (3) 12 installments commencing on the date of termination, or (4) 24 installments commencing on the date of termination.

Section 1121, 30 *Del.C.*, provides, in general, that the taxable income of a non-resident individual consists of that portion of his Federal adjusted gross income which is derived from sources within Delaware. Section 1122(b), 30 *Del.C.*, provides that items of income, gain, loss and deduction derived from, or connected with, sources within this State are those items attributable to:

"(1) Compensation, other than pensions, as an employee in the conduct of the business of his employer, for personal services (i) rendered in this State, or (ii) attributable to employment in this State and not required to be performed elsewhere; ..."

The voluntary termination payments are separate from and in addition to any pension rights to which the employee is eligible. Accordingly, such payments do not constitute and cannot be considered the equivalent of pension income, which would be excluded from Delaware sourced income under the above statutory provision.

For Federal income tax purposes, these voluntary termination incentive payments are treated as compensation for personal services and includible in Federal adjusted gross income. Hence, with respect to *Delaware residents*, such payments flow through and are includible in Delaware taxable income in the year of receipt, since no statutory modification to Federal adjusted gross income is provided under Delaware law for such payments.

With respect to *non-residents* working in Delaware, such voluntary termination incentive payments, which are similar or equivalent to "severance pay," constitute income derived from Delaware sources since they represent compensation, as an employee in the conduct of the business of the employer, for personal services rendered in this State or attributable to employment in this state and not required to be performed elsewhere. The payments are for services rendered currently, with the amount of the payment being determined or measured by the number of years of employment with the company. The purpose of the voluntary termination incentive policy is to encourage employees to voluntarily terminate employment so as to minimize involuntary terminations by the

company for lack of work, which clearly evidences that the payments are made in the conduct of the business of the employer. Accordingly, the payments are derived from Delaware sources and will flow through and be includible in Delaware taxable income of such non-resident employees. The voluntary termination incentive payments may be included in the formula used for determining the portion of taxable wages which are subject to apportionment for days worked out of the state during the last year of employment.

Employers should withhold Delaware income tax on all such payments for both resident and non-resident employees.