**COMMISSIONERS OF the SINKING FUND OF the CITY OF LOUISVILLE, Appellant,**

v.

**SOUTH CENTRAL BELL TELEPHONE COMPANY, Appellee.**

**No. 90–SC–000511–DG.**

Supreme Court of Kentucky.

May 9, 1991.

Robert F. Matthews, Jr., Michael R. Engleman, Mark F. Sommer, Greenebaum, Doll & McDonald, Louisville, for appellant.

Robert I. Cusick, Jr., Thomas J. Luber, Virginia H. Snell, H. Carl Horneman, Wyatt, Tarrant & Combs, and Creighton E. Mershon, Joseph L. Hardesty, South Cent. Bell Tel. Co., Louisville, for appellee.

1. Opinion of the Court of Appeals by LESTER, J. LESTER, EMBERTON and MILLER, JJ., sit-

## OPINION OF THE COURT

PER CURIAM:

The Kentucky Supreme Court hereby affirms the decision of the Court of Appeals in this matter. This Court adopts the opinion of the Court of Appeals which is as follows: [1]

"This is an appeal from a judgment supported by an opinion permitting appellee to impose an occupational tax upon Voluntary Separation Income Pay Plan payments made by appellant to certain qualifying employees.

Within the purview of the Federal Employee Retirement Income Security Act, South Central Bell developed a Voluntary Separation Income Pay Plan (VSIP) which permitted regular, full-time management employees, who had been with the company for twenty years or more, to elect early retirement. The election had to be made before July 15, 1987, and actual retirement had to take place prior to October 31, 1987. If the employer accepted the election, which it was not required to do, the retiring employee would receive a lump sum, post-retirement payment equal to his or her annual base rate of pay in effect as of the termination date.

The purpose of the plan was to induce senior personnel to retire earlier than was customary so that the telephone company could expand development of younger managerial personnel. The plan was very limited in scope and time and was not mandatory. If the employee opted to participate, it did not affect the employee's retirement benefits.

The City gains its privilege to levy an occupational tax for capital improvement purposes by virtue of KRS 91.200 which provided in part:

(1) The board of aldermen of every city of the first class, in addition to levying ad valorem taxes, may by ordinance impose license fees on franchises, provide for licensing any business, trade,

ting.

occupation or profession and the using, holding or exhibiting of any animal, article or other thing. License fees on a business, trade, occupation or profession for revenue purposes may be imposed at a percentage rate not to exceed those hereinafter set forth on (a) salaries, wages, commissions and other compensations earned by every person within the city for work done and services performed or rendered in the city, (all of such being hereinafter collectively referred to as "wages").

Particular attention should be directed to the language "salaries, wages, commissions and other compensations *earned* ..." (emphasis added) because this provides a focal point for a major issue in this appeal.

In January, 1987, the Sinking Fund adopted a regulation subjecting to taxation payments made in consideration for early retirement while simultaneously therewith exempting amounts paid from retirement plans. The parties reached an impasse as to the power to tax the VSIP payments, so a declaratory judgment action was filed by the appellee which resulted in a favorable summary judgment for the Fund. In so doing, the court wrote:

> In the opinion of the Court, the form of the VSIP Plan may appear at first blush to be for not working, but the substance of the transaction is compensation for services rendered over a course of 20 years. The VSIP benefits are not a gift, they are not interest, they are not dividends, and they are not retirement funds. The benefits are measured by the employee's salary. Death, Disability or termination for cause prior to the separation date automatically extinguishes any right to VSIP benefits. Thus in substance, the plan is little more than a wage continuation for a period of time, similar to a paid vacation except that the employee will thereafter go into retirement status rather than returning to work. In the opinion of the Court the words of the statute "... other compensation earned ... for service performed ..." is sufficiently broad enough to encompass not only present services but also compensation for past services performed.

Appellant's first contention is that the trial court disagreed with its argument that the payments under the plan were not earned and thus not taxable. We will deal with this initially.

We should hasten to point out that any definitions or authorities from the Internal Revenue Code or U.S. Treasury letter rulings might serve as guides but they are not binding upon us in our consideration of matter of state law. Neither do we feel bound by appellee's regulations or appellant's wording in the plan for those matters have been presented to us for interpretation. Our first concern is the enabling statute which gives life to appellee. KRS 91.200 permits Louisville to impose a license for an income earned for work done and services performed in the city. We perceive no difference between this legislation and Section 1697, Ky.Stats. which contained the phrase "salary, wages or income earned by labor" and interpreted in *Roberts v. Frank Carrithers & Bros.*, 180 Ky. 315, 202 S.W. 659, 661 (1918), to the effect that "[w]ages or money received for services is the ordinary meaning attached to the use of the word 'earnings.'" Other jurisdictions have defined "earn" and "earned income" as either requiring or implying that some labor or services have been performed in order to entitle the recipient to the money. *Hartford Electric Light Co. v. McLaughlin*, 131 Conn. 1, 37 A.2d 361 (1944); *Johnson County v. Crosier*, 211 S.W.2d 299, 300 (Tex.Civ.App.1948); *Pennsylvania Co. for Insurance on Lives and Granting Annuities v. City of Philadelphia*, 346 Pa. 406, 31 A.2d 137, 141 (1943); *Fain v. Neal*, 97 Ga.App. 497, 103 S.E.2d 437 (1958); and *Quaid v. Tax Review Board of City of Philadelphia*, 188 Pa.Super. 623, 149 A.2d 557, 559 (1959), wherein it was held that the city income tax ordinance contemplated tax only upon "earned income" and that phrase implies that some labor, management or supervision must be involved in the production of the income. We in Kentucky have deluded ourselves into believing that an occupational tax is not an income tax through the medium of

*City of Louisville v. Sebree*, 308 Ky. 420, 214 S.W.2d 248 (1948), but as Chief Justice Palmore said in *Hopson v. Commissioners of the Sinking Fund of the City of Louisville, Ky.*, 613 S.W.2d 619, 621 (1981):

> About as close as we can come to the truth of the matter is that the occupational tax is a tax on income, and probably would be illegal except for the fact that this court in *City of Louisville v. Sebree*, 308 Ky. 420, 214 S.W.2d 248 (1948), saw fit to legalize it by the stratagem of calling it something else. Now, after more than 30 years in which the tax has become an indispensable mainstay not only to Louisville but to many other local governments, nobody in his right mind wants to overrule that case.

We refer to the foregoing so that it cannot be said that "earned" or "earned income" would have different connotation as applied to an income tax as opposed to an occupational levy.

At the expense of being "ludicrous" and "overly simplistic" we view this cause as turning upon the enabling statute and its permission to tax compensations earned by work done or services performed. Our reasoning, simplistic or not, tells us that appellant's plan provides for the payment of money *for quitting work* at South Central Bell. It is only upon termination of services rendered that the employee gets the cash. It is "ludicrous" to argue that it represents payment for past services for those efforts have already been compensated. It cannot be for future work because the recipient must not continue to labor. Since the plan is extended only to those who have been employed for some twenty years and since it was fathered by the Congressionally adopted "Employee Retirement Income Security Act of 1974", it is straining logic to say that the funds are of any nature other than retirement benefits. We are aware that the trial court said that the payments are "not retirement funds" but it does not enlighten us as to why they are not so. It is immaterial as to how they are calculated because we are concerned not with the computation thereof but rather with the nature of the money. Having concluded the benefits are not earned the

appellee is prohibited from imposing the tax. Moreover, since we deem the money to be retirement benefits, they are not taxable by virtue of Section 2.03(b)(12) of the Sinking Fund Regulations.

There is a dearth of law on the subject of taxability of early retirement benefits in all likelihood due to their very recent development and utilization. Our colleagues in Delaware have treated the subject in *Gow v. Director of Revenue*, 556 A.2d 190 (Del. 1989), which appellant says maintains its position and appellee attempts to distinguish. Justice Holland, in speaking for the *Gow* court concluded (at p. 196):

> In this case, no personal services were actually rendered by Gow for which the VTI payment was compensation. The VTI payment was not paid as compensation for prior personal services rendered. The VTI payment was not attributable to the physical or mental act of making the decision to "opt" into the VTI program. Nor was it attributable to the services rendered by Gow during the short period after he made the VTI election.
>
> Once he made the VTI election, Gow did not have to work or perform any services for DuPont in order to receive the VTI payment. The VTI payment was not in consideration for rendering personal services, but was in consideration for refraining from rendering personal services. We hold that VTI payments are not included in a nonresident's income which is taxable by Delaware as compensation for personal services under 30 Del.C. § 1122(b)(1).

Appellee urges that *Gow* is inapplicable to the case at bench because it deals with a section of the Delaware code involving taxation of foreign income. Even though this is true it defines the nature of early retirement income and in this sense is germane here because we are not interested in the source of the income but rather the character of it.

The judgment is reversed with directions to sustain appellant's motion for summary judgment by an entry consistent with the views expressed herein."

STEPHENS, C.J., and COMBS, LEIBSON, REYNOLDS, SPAIN and WINTERSHEIMER, JJ., concur.

LAMBERT, J., dissents by separate opinion.

LAMBERT, Justice, dissents.

I respectfully dissent from the opinion of the Court.

The statute which authorizes levy of an occupational tax is written in broad terms intended to encompass all benefits or advantages derived as a result of employment. The statute states, *inter alia,*

"... and other compensation earned by every person within the city for work done or services performed or rendered within the city...." KRS 91.200(1).

The majority reads the statute in an extremely narrow fashion. It seems to exclude all compensation except that compensation received for current or future services performed. In my view, the VSIP adopted by South Central Bell was to compensate for services rendered in the past and to purchase the employee's right to bring an age-discrimination claim against South Central Bell.

To adopt the position of the majority, one must believe the telephone company made a gracious donation to its employees without any benefit or expectation of benefit to itself. I believe such a view is untenable, and this Court has created a major loophole which deprives the city of tax revenues to which it is justly entitled.