WYCKOFF v CITY OF DETROIT

Docket No. 196621. Submitted October 7, 1998, at Detroit. Decided December 29, 1998, at 9:00 A.M.

Frederic L. Wyckoff petitioned the Wayne Circuit Court for judicial review of a decision by the Bureau of Revenue to uphold a nonresident income tax assessment by the city of Detroit on the lump sum he received from his former employer as an incentive for his voluntary resignation. The court, Sharon Tevis Finch, J., reversed the decision of the bureau. The city appealed by leave granted.

The Court of Appeals *held*:

The city levies its income tax pursuant to the Uniform City Income Tax Ordinance, MCL 141.601 *et seq.*; MSA 5.3194(11) *et seq.*, adopted and codified at Detroit Ordinances, subsection 18-10-5(b)(1). Subsection 13(a) of the uniform ordinance, MCL 141.613(a); MSA 5.3194(23)(a), provides in part that the tax shall apply to a nonresident's salary, bonus, wage, commission, and other compensation for services rendered as an employee for work done or services performed in the city. Section 4 of the uniform ordinance, MCL 141.604; MSA 5.3194(14), defines "compensation" as salary, pay, or emolument given as compensation or wages for work done or services rendered. In this case, Wyckoff argued that he did not receive the lump sum for work done or services rendered, but for refraining from performing work or services for his former employer, and the city argued that the former employer received an economic benefit in consideration for Wyckoff's voluntary resignation and receipt of the lump sum. Both arguments logically derive from § 4 and subsection 13(a), thus rendering those provisions ambiguous. Where a tax statute is ambiguous, it is construed against the taxing unit and in favor of the taxpayer, and the scope of the tax statute will not be extended by implication or forced construction. Accordingly, § 4 and subsection 13(a) of the uniform ordinance must be construed to provide no authority for the imposition of income tax on Wyckoff's lump sum.

Affirmed.

TAXATION — UNIFORM CITY INCOME TAX ORDINANCE — NONRESIDENTS — LUMP-
SUM PAYMENTS FOR VOLUNTARY RESIGNATION OR RETIREMENT.

A lump-sum payment for voluntary resignation or retirement received
by a nonresident of a city that levies an income tax pursuant to the
Uniform City Income Tax Ordinance is not taxable compensation
under the uniform ordinance; the ordinance defines "compensa-
tion" as salary, pay, or emolument given as compensation or wages
for work done or services rendered; such lump-sum payment is a
payment for refraining from performing work or services (MCL
141.604[2], 141.613[a]; MSA 5.3194[14][2], 5.3194[23][a]).

Frederic L. Wyckoff, in propria persona.

*Joanne D. Stafford* and *Anita Ellsworth*, for city of
Detroit.

Before: KELLY, P.J., and HOLBROOK, JR., and MURPHY,
JJ.

MURPHY, J. Petitioner, an attorney, was employed
with Michigan Bell until 1989, when, in exchange for
a lump-sum payment under Michigan Bell's "Incentive
Resignation Retirement Plan" (IRRP), he voluntarily
resigned from his position. This lump-sum payment
was in addition to petitioner's normal salary that year.
On July 18, 1991, respondent found that the lump-sum
payment was taxable income and accordingly
assessed city taxes on the payment. Petitioner pro-
tested the assessment to respondent's finance depart-
ment, the Income Tax Board of Review, and the
Bureau of Revenue. Ultimately, the Bureau of Reve-
nue ruled that the payment was taxable income
because it was made in exchange for petitioner's vol-
untary resignation and thus constituted compensation
for services rendered. The circuit court, however, dis-
agreed and reversed the decision of the Bureau of
Revenue. This Court granted respondent's delayed
application for leave to appeal, and we now affirm.

We review decisions of administrative agencies in the same limited manner as the circuit court. *Barker Bros Const v Bureau of Safety & Regulation*, 212 Mich App 132, 141; 536 NW2d 845 (1995). Legal rulings of administrative agencies are set aside only if they are found to be in violation of the constitution or statute, or are affected by substantial and material errors of law. MCL 24.306(1)(a)  and (f); MSA 3.560 (206)(1)(a) and (f); *Barker Bros, supra* at 136. Where the agency has a longstanding interpretation of a statute over which it is empowered to administer, the courts will give great deference to such an interpretation, unless it is contrary to a logical reading of the statute. *Barker Bros*, supra at 136. Statutory interpretation is a question of law that we review de novo on appeal. *Oakland Co Bd of Co Rd Comm'rs v Michigan Property & Casualty Guaranty Ass'n*, 456 Mich 590, 610; 575 NW2d 751 (1998).

In this case, respondent claims to have the authority to levy a tax on petitioner's early-retirement payment pursuant to the Uniform City Income Tax Ordinance (UCITO), MCL 141.601 *et seq.*; MSA 5.3194(11) *et seq.* Specifically, respondent relies on UCITO subsection 13(a), which respondent has adopted and codified at Detroit Ordinances, subsection 18-10- 5(b)(1). Because respondent has adopted the UCITO without material alteration, see MCL 141.502; MSA 5.3194(2), we shall refer only to the provisions of the UCITO in this opinion. Subsection 13(a) of the UCITO provides, in relevant part, as follows:

> The tax shall apply on the following types of income of a nonresident individual to the same extent and on the same basis that the income is subject to taxation under the federal internal revenue code:

(a) On a salary, bonus, wage, commission, and other compensation for services rendered as an employee for work done or services performed in the city. Income that the nonresident taxpayer receives as the result of disability and after exhausting all vacation pay, holiday pay, and sick pay is not compensation for services rendered as an employee for work done or services performed in the city. Vacation pay, holiday pay, sick pay and a bonus paid by the employer are considered to have the same tax situs as the work assignment or work location and are taxable on the same ratio as the normal earnings of the employee for work actually done or services actually performed. [MCL 141.613(a); MSA 5.3194(23)(a).]

Section 4 of the UCITO defines "compensation" as follows:

(2) "Compensation" means salary, pay or emolument given as compensation or wages for work done or services rendered, in cash or in kind, and includes but is not limited to the following: salaries, wages, bonuses, commissions, fees, tips, incentive payments, vacation pay and sick pay. [MCL 141.604(2); MSA 5.3194(14)(2).]

From a reading of these UCITO provisions, we conclude that a city is empowered to levy a tax on the compensation of a nonresident of that city only for work done or services rendered within the city. Therefore, we must decide whether the lump-sum payment made to petitioner by Michigan Bell under the IRRP qualifies as compensation for work done or services rendered in Detroit.

Petitioner claims that the early-retirement payment does not constitute compensation, as that term is defined and used in UCITO § 4 and subsection 13(a), and thus is not taxable under the statute. Petitioner argues that he did not receive the subject payment "for work done or services rendered" within the city,

but, instead, for refraining from performing work and service for Michigan Bell, and therefore, respondent is not privileged to levy a tax on the payment. Thus, petitioner interprets the UCITO as not authorizing respondent to levy a tax on the payment. In contrast, respondent contends that petitioner did, in fact, perform a service for Michigan Bell when he accepted the option to retire early in exchange for a cash payment. Apparently, respondent argues that Michigan Bell received an economic benefit in consideration for petitioner's agreement to voluntarily resign his position, for which Michigan Bell compensated him with the IRRP payment. Thus, respondent interprets the UCITO as authorizing it to levy a tax on the payment. We conclude that both parties' interpretations are logically derived from UCITO § 4 and subsection 13(a), and thus, these provisions are ambiguous with respect to whether respondent may levy a tax on petitioner's early-retirement payment. Where a statue is ambiguous or susceptible to two or more constructions, judicial interpretation of the statute is warranted. *Shelby Charter Twp v State Boundary Comm*, 425 Mich 50, 72; 387 NW2d 792 (1986).

The primary goal of judicial construction of statutes is to ascertain and give effect to the intent of the Legislature. *Int'l Business Machines v Dep't of Treasury*, 220 Mich App 83, 86; 558 NW2d 456 (1996). Importantly, however, there are special rules with respect to the interpretation of statutes that levy taxes. *Auto-Owners Ins Co v Dep't of Treasury*, 226 Mich App 618, 621; 575 NW2d 770 (1997). Generally, where a statute that levies a tax is ambiguous, we construe that statute against the taxing unit. *Id.* In other words, we will not extend the scope of tax laws

by implication or forced construction. *Hart v Dep't of Revenue*, 333 Mich 248, 251; 52 NW2d 685 (1952). As our Supreme Court explained,

> "In the interpretation of statutes levying taxes, it is the established rule not to extend their provisions, by implication, beyond the clear import of the language used, or to enlarge their operation so as to embrace matters not specifically pointed out. In case of doubt they are construed most strongly against the government, and in favor of the citizen." [*Id.* at 252, quoting *Gould v Gould*, 245 US 151, 153; 38 S Ct 53; 62 L Ed 211 (1917).]

With these principles in mind, we will address whether the UCITO empowers respondent to levy a tax on the early-retirement payment made to petitioner by his former employer Michigan Bell.

This is a case of first impression for this state; however, both the Supreme Courts of Kentucky and Delaware have had the opportunity to analyze similar taxing statutes. In *Comm'rs of the Sinking Fund of Louisville v South Central Bell Telephone Co*, 809 SW2d 380 (Ky, 1991), the Supreme Court of Kentucky addressed whether early-retirement payments made to certain qualifying employees by their employers were subject to Louisville's occupational tax. The statute under which Louisville attempted to levy the tax, KRS 91.200(1), provided that a city may levy an occupational tax on "salaries, wages, commissions and other compensations earned by every person within the city *for work done and services performed or rendered in the city*" (emphasis added). *Id.* at 381. Adopting the opinion of the lower court, the Supreme Court of Kentucky concluded as follows:

At the expense of being "ludicrous" and "overly simplis-
tic" we view this cause as turning upon the enabling statute
and its permission to tax compensations earned by work
done or services performed. Our reasoning, simplistic or
not, tells us that appellant's plan provides for the payment
of money for quitting work at South Central Bell. It is only
upon termination of services rendered that the employee
gets the cash. It is "ludicrous" to argue that it represents
payment for past services for those efforts have already
been compensated. It cannot be for future work because
the recipient must not continue to labor. . . . Having con-
cluded the benefits are not earned the appellee is prohib-
ited from imposing the tax. [*Id.* at 382.]

In *Gow v Director of Revenue*, 556 A2d 190 (Del,
1988), the Delaware Supreme Court reached a similar
result. In *Gow*, E.I. duPont de Nemours & Company
(DuPont) gave its employees the option of retiring
early and commencing the receipt of retirement bene-
fits, which included a "Voluntary Termination Incen-
tive" (VTI) in the form of a lump-sum payment
equivalent to the amount of one week's salary, multi-
plied by the total number of years the recipient was
employed by the company. *Id.* at 191. The appellant
accepted the offer and received his payment; how-
ever, he did not include the payment as taxable
income on his Delaware tax return. *Id.* The Director
of Revenue for Delaware issued a Notice of Assess-
ment and Gow appealed. *Id.* at 191-192. The applica-
ble Delaware taxing statute, 30 Del C 1122(b)(1), now
codified at 30 Del C 1224(b)(1), provided that the
state may levy a tax on "[c]ompensation, other than
pensions, as to an employee in the conduct of the
business of an employer, *for personal services (i)
rendered in this State*, or (ii) attributable to employ-
ment in this State and not required to be performed

elsewhere" (emphasis added). *Gow*, at 192. The Supreme Court of Delaware first determined that the payment was not a pension as that term is generally understood. *Id.* at 193-194. The court then concluded as follows:

> In this case, no personal services were actually rendered by Gow for which the VTI payment was compensation. The VTI payment was not paid as compensation for prior personal services rendered. The VTI payment was not attributable to the physical or mental act of making the decision to "opt" into the VTI program. Nor was it attributable to the services rendered by Gow during the short period after he made the VTI election.
>
> Once he made the VTI election, Gow did not have to work or perform any services for DuPont in order to receive the VTI payment. The VTI payment was not in consideration for rendering personal services, but was in consideration for refraining from rendering personal services. We hold that the VTI payments are not includible in a nonresident's income which is taxable by Delaware as compensation for personal services under 30 Del.C. § 1122(b)(1). [*Id.* at 196.]

We are persuaded by the decisions of the Supreme Courts of Kentucky and Delaware that the early-retirement payment made to petitioner under Michigan Bell's IRRP is not taxable by respondent under UCITO subsection 13(a), which is materially similar to the statutes relied on by those courts. Petitioner did not have to perform any work or services for Michigan Bell in order to receive the payment. On the contrary, Michigan Bell made the payment to petitioner in consideration for petitioner's agreement to refrain from performing work and services for Michigan Bell. Although Michigan Bell undoubtedly received an economic benefit from petitioner's decision to accept the payment and retire, we conclude that petitioner's

acceptance of the payment, and the resulting economic benefit to Michigan Bell, do not combine to constitute "services performed in the city," as UCITO subsection 13(a) demands before respondent can levy a tax on the payment. Our decision is buttressed, we believe, by the rules of statutory construction applicable to taxing statutes. In particular, because UCITO subsection 13(a) does not clearly permit respondent to levy a tax on the payment made to petitioner under Michigan Bell's IRRP, we decline to expand the scope of the statute by implication or forced construction, and we construe the statute against respondent and in favor of petitioner. *Hart, supra* at 251-252.

Accordingly, we agree with the circuit court that UCITO subsection 13(a) does not permit respondent to levy a tax on the early-retirement payment made to petitioner by his former employer Michigan Bell.

Affirmed.